Karyl Ann Fraley ARNOLD,
Plaintiff–Appellant,

v.

Gary Lynn ARNOLD,
Defendant–Appellee.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

March 31, 1989.

Permission to Appeal Denied by
Supreme Court July 3, 1989.

Clara Willis Byrd, Nashville, for plaintiff-appellant.

John W. Rollins, Manchester, for defendant-appellee.

## OPINION

TODD, Presiding Judge.

The plaintiff, Karyl Ann Fraley Arnold, has appealed from a post-divorce decree order entered by the Trial Court on July 15, 1988, changing custody of the minor child of the parties from the plaintiff-mother to the defendant-father.

Appellant presents two issues relative to the said order, but both assert error in the change of custody.

First, appellant asserts that there is no material evidence to support a finding that the best interests of the child would be served by the change in custody.

Secondly, appellant asserts that there is no evidence of change of circumstances to justify the change in custody.

Appellee complains that a large part of the evidence relates to events prior to May 1, 1988, the date of the last previous order in the case. It appears that an order was entered on May 12, 1986, following a hearing on May 1, 1986, but this order does not relate to custody.

In considering change of custody, a court must determine what, if any changes in circumstances have occurred since the last custody order. Where the record of the former custody hearing is not available, it is usually necessary to show the circumstances in existence at the former hearing in order to establish a change of circumstances since said hearing. For the purpose of the determination of change in circumstances, the evidence of former circumstances is not only admissible but usually necessary.

The history of this case is lengthy, but it must be considered in order to properly evaluate the judgment under review.

On August 11, 1980, an order was entered granting plaintiff an absolute divorce; and the custody of the child of the parties "to be born in or about September, 1980," was committed to plaintiff with right of visitation reserved to the defendant while sober and conducting himself in a safe manner. Defendant was ordered to pay $52.50 per week child support. Defendant was permanently enjoined from coming about plaintiff or her family except in visitation as permitted in the order.

On November 7, 1980, defendant filed a petition for contempt for refusal of visitation and for an order requiring that the birth certificate of the child be amended to change the last name of the child to Arnold.

On December 1, 1980, the Trial Court entered an order stating that the petition to enforce visitation was found to be "with merit" and ordering visitation in the home of plaintiff from 5:00 p.m. to 6:30 p.m. on November 24, 25, 26 and 27, 1980. The order stated further:

It appearing that the petitioner (defendant) is leaving the State of Tennessee the night of November 27, 1980, and is entering the Navy on December 1, 1980. Subsequently, when the child is of sufficient age, this Court will determine further visitation outside of the plaintiff/mother's home.

On December 10, 1980, defendant filed a petition requesting that child support be set "commensurate with the rate of pay which he will receive in the Navy."

On January 19, 1981, the Trial Court entered an order stating that defendant's motion to set visitation "by agreement of plaintiff when he becomes aware of leave time" was well taken and ordering the case continued "until such time as defendant can notify the parties and the Court of his designated leave time in advance of said leave time."

On September 30, 1981, plaintiff filed a "Supplemental answer and counterclaim" asserting that no child support had been paid by defendant or by the U.S. Navy, and that a total of $5,359.52 was due as a result

of previous orders of the Court. A finding of contempt was requested.

On July 2, 1982, the Trial Court entered the following order:

This cause is dismissed by the Court for lack of prosecution and the costs are taxed equally to the parties.

On February 4, 1986, the defendant filed a petition to set visitation. The plaintiff answered, consenting to visitation in her presence "until such time as the minor child establishes a relationship with the father". By counterclaim, the plaintiff asserted an arrearage of $4,943.16 in support payments and prayed for a judgment of contempt. The counterclaim was amended to $5,943.16.

On May 1, 1986, a hearing was held on the petition for visitation at the conclusion of which the Trial Court stated:

THE COURT: I want to do what's best for the child. As I have said many times, these people are no longer husband and wife but they are still mother and father. I want to do what is best for the child and I want to make the whole transition just as easy as I can.

I have got an indication, Ms. Fraley, that you and/or your family are going to do everything you can to make this transition as long and as unpleasant on him as you can. Now, I want to impress upon you that making it unpleasant on him is going to make it unpleasant on the child. You might as well get your mind set and your thoughts in line to accept the fact that this child is going to spend some overnight time with her father.

Now, I am going to bear with you for a reasonable length of time. If I get the idea that you're dragging your feet or slow walking the whole situation, then that's going to come to a sudden change and there's going to be a very quick lengthy period of overnight custodial visitation with this child's father. Now, don't pull my leg about it. I think you have been unreasonable.

I am impressed by both of these parties favorably in some respect and unfavorably in others as to both of them. I just want this known that it's coming

down. Maybe a transition period beyond what has already taken place may be helpful. I don't know that I can order anything any better than these McDonald's visits or the public park situation.

You bring family and allies and cohorts and troops to back up your frame of mind and it's going to create a situation as far as both of you are concerned and it's not going to be conducive to this father getting to know this child. Make up your mind, Ms. Fraley. It's going to be your way for a little while. When I see that you're not going to be reasonable about it—and I don't think you have so far—it's going to be my way.

. . . .

THE COURT: At any rate, I don't want anyone besides this mother and father in the immediate presence of this visitation where that child can be affected or see the other individuals. If you want to spy with a pair of field glasses on top of a building 300 yards away, Ms. Fraley, that's fine, but you keep your family out of this and you keep yours out of it. You two are the parents of this child and I am going to let the transition take place along those lines.

. . . .

THE COURT: I have raised two children. I could make a five year old do anything—maybe not make them like it, but I could make them do anything I wanted them to do and I expect the parents to do that. I've done it and I expect these parents to do that.

Now, let me tell you something about these parties. I am impressed with his desire to see the child and her desire to protect the child favorably. I am impressed unfavorably with what I think is an unreasonable attitude on her part concerning the father spending some time with the child. I am impressed unfavorably on his part that he would rather drive an automobile while he was in the Navy than to see that $150 went to support his child.

Those are factors I had in my mind and I want you to know that I am impressed

with those things, but not in the direction that you might desire.

On May 12, 1986, the Trial Court entered an order specifying times and conditions of visitation and awarding plaintiff judgment against defendant for $5,954.00 to be paid at $100 per month "in addition to the child support as originally ordered."

On June 3, 1986, defendant filed a motion asserting that plaintiff had removed the child from the State and praying for appropriate relief.

Plaintiff filed an affidavit that she had moved to Hawaii after defendant had told her that he did not care if she and the child moved out of the State, that he had no interest in the child, but that it was his mother who had instigated proceedings regarding the child.

On September 2, 1986, the Trial Court entered an order requiring defendant to continue to make child support payments to the Clerk, but requiring the Clerk to retain such payments pending further order of court.

On September 3, 1986, the defendant moved the Trial Court to transfer child custody to him on the ground that plaintiff had frustrated his efforts at visitation, had sought to extinguish and destroy the relationship of father and daughter and had moved to Hawaii.

On January 20, 1987, the plaintiff filed a motion to dismiss on grounds that the State of Hawaii had become the home state of the child by more than six months residence.

On January 22, 1987, plaintiff filed in the Family Court of the First Circuit of Hawaii a motion and affidavit under the Uniform Child Custody Jurisdiction Act requesting custody of the child with reasonable visitation to the defendant.

On February 5, 1987, defendant filed in the Trial Court a petition to terminate child support and for refund of child support from the Clerk to finance a trip to Hawaii to gain custody of the child.

On February 13, 1987, the Trial Court entered an order permitting defendant to terminate child support payments and to withdraw from the Clerk the child support being held by him.

On March 26, 1987, plaintiff answered the petition to change custody, denying jurisdiction, denying that the petition states grounds for change of custody and demanding a jury to try the issues.

On July 16, 1987, the Trial Court struck the jury demand and set a trial for September 2, 1987.

On September 1, 1987, in response to a motion of defendant, the Trial Court ordered plaintiff to appear and personally testify on September 2, 1987.

On June 28, 1988, plaintiff moved the Trial Court to be relieved of the duty of appearing for trial.

On July 6, 1988, the Trial Court filed an opinion stating:

Considering the factors set forth in *Bah v. Bah,* 668 S.W.2d 663 (Tenn.App. 1983) and recognizing that the paramount consideration in a matter of this nature is the best interest of the child, the Court is of the opinion that Mr. Arnold has carried the burden of proving that there has been a sufficient change of circumstances in this matter to justify a modification of the previous custody decree.

At the time of the hearing in May, 1986, this Court was favorably impressed with the desire of Mr. Arnold to establish a meaningful relationship with his child. It was recognized and admitted that prior to this time he had shown gross inadequacy as a parent and gross indifference to his relationship with said child, but at the hearing in May, 1986, a different picture was presented to the Court. This picture has now been strengthened as far as his desire to establish the relationship with the child is concerned, inasmuch as he has now obviously settled down, been fighting for an opportunity to be with his child, has married a most impressive young lady, and is deserving of an opportunity to be with the child.

On the other hand, the Court is badly impressed with the fact that the mother of this child, while testifying at the May,

1986, hearing, probably was aware that she was about to remove herself and the child from the jurisdiction of this Court. This Court stated to her on the hearing, after it was obvious that she and her family were grossly opposed to any contact by the father with his child, to the effect that "you may as well get accustomed to the idea that this man is going to spend time with his child, because the Court is of the opinion that he is entitled to do so and should do so." As stated on this hearing the Court was mistaken regarding the father's opportunity to be with the child inasmuch as the wife has removed herself from the jurisdiction of the Court and done everything within her power contrary to the spirit and intent of the order of May, 1986, to see that this father does not get to know this child. The record in this case will show that the family of the mother was greatly upset when this head-strong young woman married the petitioner—that her father, an eminent and well-known radiologist, did not approve of the petitioner herein, and while it may not be clear in this record, it is without question that the father, while keeping his skirts clean as far as direct involvement in this matter is concerned, was the financial backbone of the mother's thwarting of the May 1986 order and it is without any doubt in the Court's mind that he had a large part to play in the move by this mother to the State of Hawaii. If not shown directly it is circumstantially in this record.

At any rate, the change in attitude of the father, recognition of his responsibility to the child, his remarriage, his steady employment since the last hearing, and his stated desires to establish a relationship with this child constitute a sufficient showing and carrying of the burden of the proof in this case to divest custody of the minor child from the mother and vest same in the custody of the father subject to reasonable visitation by her on a schedule to be later delineated and approved by the Court. The matter of the transportation of the child between Tennessee and the State of Hawaii will be easily facilitated by the use of the no-cost airline tickets available to the petitioner as a result of his employment with American Airlines.

Another factor which impels the Court to be convinced that a change of custody is proper, or at least is not improper, is the fact that neither the mother nor her present husband saw fit to appear before this Court and testify in person so that the Court might have an opportunity to observe the mother in her present condition, evaluate her testimony nor do the same for her present husband. In this connection, the Court might observe that this woman has been considerably less than fair and candid with this Court: In the first instance she begged for a delay in this hearing on account of her delicate and difficult pregnancy and then at the last moment, in fact the day prior to the scheduled hearing, she moved this Court and was allowed not to attend the hearing for "financial reasons". This afterthought is not well accepted by the Court and in addition, on the hearing she moved the Court, through her attorney, to disregard any and all testimony relative to occurrences prior to the order of May, 1986 and lo and behold, upon the Court's reading of the depositions filed by her on the hearing, that of herself, her father and her husband, the Court finds that there is much, much, much testimony therein concerning matters prior to May, 1986, and in addition considerable hearsay.

Mr. Rollins will therefore prepare a decree granting the relief sought in the petition for a change of custody, taxing the costs of this proceeding to the respondent mother, and holding all other matters, including a visitation schedule with the mother in abeyance pending further hearing and order.

On July 11, 1988, the Trial Court entered an order rescinding its order requiring plaintiff to appear and testify.

On July 15, 1988, the Trial Court entered an order transferring the custody of the minor child to defendant and reserving the issue of visitation.

On August 10, 1988, plaintiff filed a motion to alter or amend seeking relief from the July 15, 1988, judgment and the order relieving defendant of child support payments and releasing the funds in the Clerks hands to the defendant.

On August 11, 1988, the Trial Court overruled the motion.

■ Remarriage of either parent does not of itself constitute change of circumstances that would warrant change of custody. Possible change in home environment caused by remarriage is a factor to be considered in determining whether there has been a material change in circumstances that would warrant alteration of custody arrangements. *Tortorich v. Erickson,* Tenn.App.1984, 675 S.W.2d 190.

There is no hard and fast rule as to what constitutes "changed circumstances" for modifying child custody. The ultimate goal is the best interest of the child, and "changed circumstances" may or may not be found in that search.

The removal of the custodial parent with the children to another country is not necessarily a "changed circumstance" to warrant change of custody. *Walker v. Walker,* Tenn.App.1983, 656 S.W.2d 11.

It is important that a child have a "meaningful relationship" with the noncustodial parent. *Dillow v. Dillow,* Tenn.App.1978, 575 S.W.2d 289. However, it is not always possible to accommodate all of the needs of a child within the peculiar circumstances of the case. It must be recognized that when a marriage is dissolved by divorce, it is impossible for the children of the marriage to enjoy the same relationship with both parents as might be enjoyed if both parents reside in the same home.

Upon granting a divorce, it becomes the duty of the court to determine custody in accordance with the best interests of the child or children. Of necessity, one parent must be favored above the other, but this is inherent in the divorce procedure, and cannot be avoided. The non-custodial parent is usually granted "visitation", but this privilege is granted for the best interests of the child or children, and the grant or enforcement of "visitation" is not justified where it results in injury to rather than enhancement of the best interests of the child or children.

After the lapse of 30 days without appeal, an adjudication of custody is res judicata on the facts then existing and may not be modified except "such as the exigencies of the case may require". T.C.A. § 36-6-101(a); *Darty v. Darty,* 33 Tenn. App. 321, 232 S.W.2d 59 (1950).

■ The provision of a divorce decree awarding custody of a minor child to the mother was an adjudication against the father's right, and, in the absence of a change in circumstances which required a change of custody for the welfare of the child, the decree was conclusive against the father. The remarriage and removal to another state by the custodial parent is not a ground for change of custody. *Hicks v. Hicks,* 26 Tenn.App. 641, 176 S.W.2d 371 (1944).

There is evidence of the following occurrences since the original award of custody.

1. The birth of the child was registered in the maiden name of the mother because the father had stated that he did not want the baby and desired an abortion.

2. The mother and baby lived with the mother's parents for three years.

3. The father visited the child infrequently, refused to hold her and said he did not want to touch her or to have anything to do with her.

4. Two years passed without any visit or support by the father.

5. In June, 1985, the father came to the mother's home but would not have anything to do with the child.

6. The mother consistently refused to allow visitation alone with the child "until the father and child established a relationship".

7. The child was terrified by the behavior of her father and suffered nightmares after visits with him.

8. The mother has remarried and has an infant born of the marriage.

9. The mother's father decided to retire to Hawaii. She went to Hawaii with her parents. The child is adequately cared for by her mother in the grandparent's home. The mother and her husband expect soon to occupy adequate housing "on post", taking the child with them.

10. When the father visited the child in Hawaii, the child was still afraid of him.

11. The father served 5 years in the U.S. Navy, during which time no child support was paid by the father or the Navy.

12. The father remarried in September, 1988, and no children have been born to this marriage. He resides in Smyrna, Tennessee.

13. The father works for an airline and gets unlimited passes for himself or dependants, which would include the child, eight times per year. That is, the father or the child is in position to travel between Hawaii and Tennessee without cost.

14. The mother's father, a physician, has been the principal support of the mother and child since the divorce.

15. The child has a good relationship with her stepfather, who is stationed at Schofield Barracks, Hawaii. He supports the child, lists her as a dependent on his army records and would like to adopt her. The child has requested that he adopt her.

The record contains the testimony of a child psychiatrist who treated the child for an adjustment disorder with features of anxiety arising out of fears that she would be taken from her mother and turned over to her father. The witness advised careful and gradual introduction to her father whom she did not know and feared. An appointment was made for a joint consultation with the two parents, and the child during one of the father's visits to Hawaii, but he did not attend the conference.

The psychiatrist advised against a sudden and complete change in custody and living conditions.

It is clear from the statements of the Trial Court, quoted above, the the transfer of custody and refund of child support resulted solely from the perceived attitude and actions of the mother in thwarting the efforts of the court to enforce the establishment of a normal relationship between the child and its father, particularly the mother's reluctance to allow the child to be with the father overnight.

It cannot be denied that the mother was uncooperative with the desires and plans of the Trial Court in respect to establishing such relationship. The Courts are not empowered to force children to do their will as a father might do, but it is the duty of divorced parents to comply with the spirit and letters of divorce courts or to obtain review by appeal.

A father who has behaved toward this child as this father has behaved cannot expect to command or receive the attitude and affection which a normal child would show its father who had cared for and nurtured her from birth. The affection of a child must be earned. It cannot be commanded. Where neglect persists for so long as occurred in this case, the establishment of a wholesome relationship is difficult and, in some cases, may be impossible.

For her entire life, the child has lived in the home of her maternal grandfather who has thereby become the male whom she loves and trusts. She has now become the step-child of another man whom she loves and trusts. The position of her natural father, by default, has become distant and negative. The relationship with the father will be established, if ever, only with great patience, care and difficulty.

As stated, the relationship with the father must not be forced upon the child to her detriment. And yet, the mother must not unreasonably interfere with its establishment.

The removal of the mother with the child to Hawaii served to frustrate the order of the Trial Court for visitation. Although the mother testified that she did so because of the father's disinterest in the child and failure to object, it would have been far wiser for the mother to seek the approval of the Court for the move.

In *Rogero v. Pitt*, Tenn.1988, 759 S.W.2d 109, the mother petitioned the Trial Court for leave to move to another state where

she planned to remarry. The father objected on the ground that it would disrupt a joint custody agreement. The Trial Court and this Court denied the petition, and held that primary custody would be awarded to the father if the mother left the state. The Supreme Court reversed and said:

... We respectfully disagree and hold that the mother carried the burden of proof incumbent upon her to show that the removal was in the best interest of the children under all of the circumstances. The cause will be remanded to the trial court to consider and fix periods of visitation if the parties are unable to reach an agreement concerning same.

....

During the years of their marriage, the wife was able to attend school part-time. Since the divorce in 1983 she has completed graduate studies at the University of Tennessee in Knoxville. She wishes to marry a resident of Dayton, Ohio, who lives in the neighborhood of her sister, and not far from her mother and other relatives. The trial judge found the proposed stepfather to be an entirely fit person to have the children in his home. He is the father of four other children, all of whom reside in his home, which is spacious and has ample room for all of the persons involved. Both children of the parties to this case are highly intelligent. They are rated as "gifted" children, and educational facilities in Dayton were shown by evidence to be as good or better for such children as the facilities available in Knoxville. Job opportunities for the wife in Dayton were shown to be more favorable than in Knoxville.

....

Both the trial court and the Court of Appeals placed great emphasis upon the fact that when the parties were divorced, their agreement regarding custody of the children was embodied into the final judgment. The decree reflected an agreement by the parties that they should have "joint legal custody of their children". At the time of their divorce, the decree recited that the children "at the present time" were "physically resid-

ing with the wife". The parties agreed that physical residence of the children might be changed "in full or in part at any time by mutual agreement of the parties".

....

Nothing was contained in the agreement concerning the removal of either party from Knoxville or from the State....

Nothing in the decree purports to restrict either party from moving out of Knoxville or out of state. Both the trial court and the Court of Appeals recognized this fact, but both felt that a removal to Dayton, Ohio, some 300 miles, involved a distance too great to permit continuation of the joint custody arrangement. The trial judge indicated that if the distance were somewhat less, he would approve removal. He recognized that the desire of the wife to remarry was a legitimate reason for removal.

....

There are few legal formulae or invariable principles to guide the courts in decisions of this nature. Such decisions are primarily factual, not legal. Attempts to reduce to legal doctrine the resolution of cases such as this usually have little significance. The best interests of the children under all of the circumstances, which, of course, include their relationships with their parents, must be the concern of the courts. 759 S.W.2d at 709–711

In *Walker v. Walker*, Tenn.App.1983, 656 S.W.2d 11, the custody of the three minor children was committed to the mother with rights of visitation to the father. Subsequently, the father petitioned for change of custody on grounds that the mother planned to remove the children to Toronto, Canada. The petition was denied by the Trial Court. This Court affirmed, and the Supreme court denied application for permission to appeal. The opinion of this Court states:

The last issue involved in this appeal concerns the action of the court in allowing wife to remove the children to Toronto, Canada and in denying the husband's

petition for change of custody. This issue really boils down to whether the action of the court was in the manifest best interest of the children.

[7, 8] In cases involving child custody, the court reviews the record de novo, but without the usual presumption of correctness. *Smith v. Smith,* 188 Tenn. 430, 439, 220 S.W.2d 627, 630 (1949); *Bevins v. Bevins,* 53 Tenn.App. 403, 409–410, 383 S.W.2d 780, 783 (1964). The single guiding star in determining child custody cases is the welfare and best interests of the children.

[9] It is a well settled principle of law in this state that where a decree has been entered awarding custody of children that decree is res judicata and is conclusive in a subsequent application to change custody unless some new fact has occurred which has altered the circumstances in a material way that the welfare of the children requires a change in custody. *Long v. Long,* 488 S.W.2d 729, 731–732 (Tenn.App.1972).... The sole contention of husband for change of custody is that the children should not be removed with the mother to Toronto, Canada.

....

[12] We feel that in matters involving the removal of children from the jurisdiction in which custody was awarded we are still bound by the paramount rule that whatever is done must be in the best interest of the child....

... The custodial parent must make arrangements for the continued care and well-being of the minor children, and the mental and physical condition of the custodial parent would of necessity have some affect on the well-being of the children. 656 S.W.2d at 16, 18

■ As stated, the attitude and behavior of the mother in respect to visitation could and should be more amenable to the presently professed desire of the father to "get to know" his daughter. Under the circumstances of the case, this attitude is understandable but not entirely excusable. However, this does not represent such a "change in circumstances" or "exigency" as would justify the sudden removal of a child of tender years from the excellent care of her mother, her grandfather, and the only home environment she has ever known for the single purpose of her "getting to know" her natural father whom she has never known.

With great deference to the good intentions of the Trial Court, this Court is constrained to and does reverse the transfer of custody from the mother to the father.

This Court finds considerable comfort in the ability of the father to fly to Hawaii frequently without cost. With a minimum of reasonableness on both sides, the child and father should be able to enjoy seeing and knowing each other. However, in the last analysis, the courts can only afford opportunity for development of a father-child relationship, and cannot compel or create such a relationship.

If this decision of this Court should become final, it is obvious that a Hawaii court would be in much better position to provide and enforce the desired opportunity for developing the father-child relation in the place of the child's residence. For this purpose it would appear desirable to yield jurisdiction for this purpose to a Hawaii court.

■ The appellant also challenges the action of the Trial Court in allowing the father to withdraw from the Clerk's office the child support payments accumulated therein by order of the Trial Court.

So far as this record shows, said action of the Trial Court was taken without any semblance of due process. On this basis, it is invalid and should be vacated.

The practical effect of said action was to refund (i.e. forgive or retroactively terminate) child support payments, which is forbidden by T.C.A. § 36–5–101(a)(5) which provides:

(5) Any order for child support shall be a judgment entitled to be enforced as any other judgment of a court of this state and shall be entitled to full faith and credit in this state and in any other state. Further, such judgment shall not be subject to modification as to any time period

or any amounts due prior to the date that an action for modification is filed and notice of the action has been mailed to the last known address of the opposing parties.

This Court respectfully disagrees with the propriety of the action of the Trial Judge in suspending disbursement of child support to the mother and permitting withdrawal of accumulated child support by the non-custodial father, which action will be reversed; and the father will be required to restore the amount withdrawn to the custody of the Clerk.

Appellant also complains of the action of the Trial Court in terminating child support. The basis of this action was doubtless the transfer of custody to the father. Support was properly suspended on the date the father was granted custody, and it should continue to be suspended until the finality of the decision of this Court which will restore custody to the mother. Thereafter, support will be payable as previously ordered by the Trial court. Upon remand, the period of suspension will be adjudicated by the Trial court in conformity with this opinion.

In summary:

1. The order of September 2, 1986, requiring the Trial Clerk to retain child support payments pending further order of Court is reversed and vacated and the Trial Clerk is required to disburse to the mother all child support in his hands and hereafter received.

2. The order of February 13, 1987, permitting the father to terminate child support and to withdraw from the Clerk all child support held by him is reversed and vacated, the father is required to pay to the Clerk all child support due from February 13, 1987, until the date the father was granted custody of the child, and from the date of the finality of the judgment of this Court until the original order of support is otherwise modified.

3. The order of July 15, 1988, transferring custody from the mother to the father is reversed and vacated, and the custody of the child will be delivered to the mother upon the finality of the action of this Court.

4. All costs of this appeal are taxed against the appellee.

5. The cause is remanded to the Trial Court for further proceedings consistent with this opinion.

Reversed and remanded.

LEWIS and CANTRELL, JJ., concur.