IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

## STEPHEN PATTERSON v. SUSAN A. PATTERSON (YONAVICH)

**An Appeal from the Chancery Court for Shelby County**
**No. D25622-I;  The Honorable Walter L. Evans, Chancellor**

---

**No. W1999-01544-COA-R3-CV - Decided June 1, 2000**

---

This appeal arises from an order of the Chancery Court of Shelby County which changed primary physical custody of the parties' minor children to the Mother.  The Father appeals from the trial court's decision.

**Tenn.R.App.P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

HIGHERS, J., delivered the opinion of the court, in which CRAWFORD, P.J., and FARMER, J., joined.

John B. Philip, CRISLIP, PHILIP & ASSOCIATES, Memphis, for Appellant, Stephen Patterson

Stephen R. Leffler, LAW OFFICE OF STEHPEN R. LEFFLER, P.C., Memphis, for Appellee, Susan A. Patterson (Yonavich)

### OPINION

Stephen Patterson appeals from the decision of the Chancery Court of Shelby County which changed primary physical custody of his two minor children to his former wife.  For the reasons stated herein, we reverse the decision of the trial court.

### I. Facts and Procedural History

Stephen Patterson and Susan A. Patterson were divorced pursuant to a Final Decree of Divorce entered on September 11, 1995.  At the time of the divorce proceedings, Ms. Patterson resided in Metropolis, Illinois. Ms. Patterson did not contest the divorce nor the decision to give Mr. Patterson custody of the parties' two minor children.

Ms. Patterson apparently had no contact with her children for a period of time following her divorce.  In or around March of 1997, Ms. Patterson, then having moved to Houston, Texas, sought and obtained limited visitation rights with her children.  Her visits were limited to once a month and took place in Memphis.   Her visitation rights were subsequently expanded to allow her to take the children out of state on certain holidays.

On January 16, 1998, Mr. Patterson filed a petition for contempt in the Chancery Court of Shelby County alleging that Ms. Patterson had failed to comply with the provisions of the Final Decree of Divorce. Specifically, he alleged that Ms. Patterson had failed to pay child support as ordered in the final decree. Ms. Patterson answered the complaint and filed a counter-complaint in which she asked the court to give her custody of the parties' children, claiming that such a change was in the best interests of the children. As grounds for the change, Ms. Patterson alleged that Mr. Patterson had a live-in girlfriend and her presence indicated a "contempt for the prior orders" of the court, as well as being indicative of Mr. Patterson's "inability to control his behavior around his minor children."

The petition for contempt and the counter-complaint seeking a change in custody were heard on June 4, 1998. The trial court issued an order in which the Petition for Change of Custody was denied based on the finding that no material change in circumstances existed. However, the court also determined that the matter should be continued for one year, at which time the question of custody would be reviewed.[1] The order also stipulated that Mr. Patterson was not to have any female guest in his home past 10:00 P.M.[2]

The matter came to be re-heard in June of 1999, whereupon the trial court ordered a change of custody.[3] The court found that it was in the best interests of the children for primary physical custody to be changed from Mr. Patterson to Ms. Patterson. In its oral ruling following the hearing, the court stated:

> The question is what has happened since that time [1998 hearing]? It appears that Mr. Patterson and the lady with whom the Chancellor had referred to, Ms. Angela, married in September of '98, and apparently Ms. Patterson moved into the residence with her two children. The new Ms. Patterson has two minor children, neither of whom is receiving child support from their natural father.
>
> Mrs. Patterson has secured new employment in a very stable type situation in Houston, although she's living in an apartment. She has not remarried. She has no other children except these two - - two young girls, who are ages seven and eight.
>
> It appears as though there has been some problems that exist between - - that has come between the natural mother and the stepmother. It does appear that Ms. Yonavich, the former Mrs. Patterson, has called the home of the children on

---

[1] In making his oral ruling at the hearing of the matter, the Chancellor stated: "It's a close case. The Court will not make a final decision. The Court will leave custody as it is on a temporary basis and ask that you come back in one year."

[2] Subsequent to this order, on September 25, 1998, Stephen Patterson remarried. For purposes of clarity, his current wife will be referred to by her name, Angela Patterson.

[3] The 1999 hearing was conducted before a different chancellor than the 1998 hearing.

numerous occasions, and based on her testimony, 60 percent of the time she speaks with the stepmother rather than the natural father of these children, Mr. Patterson.

It appears as though Mr. Patterson is not employed presently and has not been employed since February but that since he's had custody of these children he apparently has love and devotion for these children, and apparently the natural mother has love and devotion for these children.

And in looking at all of the facts and circumstances, as the Chancellor indicated in June, it was a close case, but in this Court's opinion, it will be in the best interests of these children that the custody arrangement be changed to where both parties have joint custody with the primary residence of these children being with the natural mother, Ms. Yonavich [Patterson].

. . . . .

But the court does feel that the intrusion into this relationship by the stepmother has had a negative impact on the mother/father relationship as it relates to these two children and that these children can best identify and maintain the relationship of parent and children with the primary custody of these children resting with the natural mother.

It is from this order that the present appeal arises.

## II. Law and Analysis

When considering a petition to modify custody, the threshold issue is whether there has been a material change in circumstances occurring subsequent to the initial custody determination. See Massengale v. Massengale, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995) (citing Dailey v. Dailey, 635 S.W.2d 391, 393 (Tenn. Ct. App. 1981)). If the trial court determines that there has, in fact, been a material change in circumstances, the court then seeks to devise a custody arrangement that is in the best interests of the child. See Varley v. Varley, 934 S.W.2d 659, 665-66 (Tenn. Ct. App. 1996) (quoting Koch v. Koch, 874 S.W.2d 571, 575 (Tenn. Ct. App. 1993)); Tenn.Code Ann. § 36-6-106 (Supp.1998). Absent a material change in circumstances, however, the petition to modify custody must be denied. Our review of the trial court's ruling on a petition to modify custody is *de novo* on the record, accompanied by a presumption of correctness of the findings below. See Hass v. Knighton, 676 S.W.2d 554, 555 (Tenn. 1984); Gaskill v. Gaskill, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996); T.R.A.P. 13(d). Thus, we may not reverse the ruling of the trial court unless it is contrary to the preponderance of the evidence. See Hass, 676 S.W.2d at 555; Massengale, 915 S.W.2d at 819; T.R.A.P. 13(d).

"Changed circumstances" includes any material change of circumstances affecting the welfare of the child or children including new facts or changed conditions which could not be anticipated

3

by the former decree. <u>Dalton v. Dalton</u>, 858 S.W.2d 324, 326 (Tenn. Ct. App. 1993). The presence of the word "material" indicates that the change must be significant. <u>See</u> BLACK'S LAW DICTIONARY 991 (7th ed. 1999).

Although such a finding may be implicit, the trial court's order changing custody did not state that a material change of circumstances had occurred. We are somewhat troubled by this fact in that the trial court failed to specify the factors which caused it to conclude that a custody change, an undeniably traumatic event, was warranted. We are, therefore, left to review the trial court's oral ruling in order to ascertain the basis for the order changing custody.

Apparently, the primary basis for the custody change was the alleged interference with Ms. Patterson's relationship with her children. Ms. Patterson cites to numerous instances where her role as the natural mother was met with interference by Mr. Patterson, as well as Mr. Patterson's new wife, Angela. Not unexpectedly, both Mr. Patterson and Angela Patterson testified that they never attempted or intended to interfere with Ms. Patterson's role as the children's mother.

We should point out that there are no allegations that Mr. Patterson is in any way an unfit parent. In fact, the trial court specifically found that Mr. Patterson "has love and devotion for these children." The record indicates that the children were happy and well-adjusted while living with Mr. Patterson. Therefore, we are convinced that the change of custody was not warranted based on any argument that the children would be in a better home situation if placed with their natural mother.

Our review of the record leads us to conclude that this case is the product of the natural and not unexpected consequences of divorce. <u>See Arnold v. Arnold</u>, 774 S.W.2d 613, 618 (Tenn. Ct. App. 1989)(noting that when a marriage is dissolved by divorce, it is impossible for the children of the marriage to enjoy the same relationship with both parents as might be enjoyed if both parents reside in the same home.). Those consequences are exacerbated where, as in the present case, one of the parents, especially the custodial parent, remarries. The custodial parent is met with the responsibility of insuring that the non-custodial parent's rights are maintained. While there is no definitive indication that Mr. Patterson deliberately interfered with his former wife's interaction with their children, there very well might have been some instances in which he could have taken actions different from the course he chose. Such actions on his part might have produced better communication between the parties, thereby avoiding the present situation. However, we find nothing in the record to indicate that the lack of communication constituted a material change in circumstances.

As for the role of the stepmother in the children's lives, we are not persuaded that this serves as a basis for a change of custody. The trial court found that the "intrusion into this relationship by the stepmother has had a negative impact on the mother/father relationship as it relates to these two children." Again, we are faced with a natural consequence of divorce. Having remarried, Mr. Patterson's new wife does, by necessity, have a role in the children's lives. It is understandable that Ms. Patterson is disturbed by the prospect, real or perceived, that her role as the mother is being diminished. However, it is far from clear that Angela Patterson took any affirmative steps to inject

4

herself as the mother to these children. In fact, there is ample evidence in the record to indicate that the contrary is true. The testimony is clear that Angela Patterson speaks with Ms. Patterson frequently regarding the children, including instances in which she has called Ms. Patterson to inform her of activities in which the children will be involved.[4] Every indication is that the Angela Patterson has taken an active role in helping maintain the relationship between mother and children.[5] While we do not wish to trivialize Ms. Patterson's perceptions of the situation, we do not believe the record supports her argument that Angela Patterson was attempting to displace her as the children's mother.

The allegations in this case are similar to those contained in Brumit v. Brumit, 948 S.W.2d 739 (Tenn. Ct. App. 1997).[6] In that case, the only basis for the change advanced by the father was the mother's alleged interference with his visitation and her denigration of his role as the child's father. The court rejected the father's request for a change of custody finding that there was no evidence that the circumstances of the parties and their child had changed since the divorce in a way that would require a change in the basic custodial arrangement. The court also noted that to the extent the record supported a finding that the father's role was being interfered with, that conduct could be addressed by the trial court through its contempt power and in other ways. Those same remedies are equally applicable in the present case.

Under Tennessee law there is a strong presumption in favor of continuity of placement. Aaby v. Strange, 924 S.W.2d 623, 627 (Tenn. 1996); Gaskill, 936 S.W.2d at 631; Taylor v. Taylor, 849 S.W.2d 319, 328, 332 (Tenn.1993); Hill v. Robbins, 859 S.W.2d 355, 358 (Tenn.App.1993). Even though T.C.A. § 36-6-101(a)(1) allows a trial court's initial award of custody to be modified, it is clear that:

> where a decree has been entered awarding custody of children, that

---

[4] Ms. Patterson has made much of the fact that Mr. Patterson is not the person corresponding with her regarding the children. While the lack of communication between the parents is unfortunate, it is only one factor among many we must consider.

[5] Ms. Patterson also cites to the fact that the children refer to their stepmother as "Ms. Angela Mommy." She contends that this fact shows the confusion that exists, and is evidence that her role as mother is being diminished. We refuse to engage in analysis of why children use the names they use. Such an attempt on our part would ultimately be inconclusive.

[6] Ms. Patterson argues that Brumit is inapplicable in light of the adoption of T.C.A. § 36-6-106(10) which provides as a factor in custody determination "[e]ach parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child." We consider the rationale of Brumit, namely that alleged interference with parental rights and denigration of the parental role is not alone sufficient to justify a change in custody, to be viable. The aforementioned statutory section is only one of several considerations. Our consideration of all the factors in T.C.A. § 36-6-106 leads us to conclude that Ms. Patterson's allegations, even if true, do not justify the extreme remedy allowed by the trial court.

5

> decree is res judicata and is conclusive in a subsequent application to change custody unless some new fact has occurred which has altered the circumstances in a material way so that the welfare of the child requires a change of custody.

Griffin v. Stone, 834 S.W.2d 300, 301-02 (Tenn. Ct. App. 1992). See also Musselman v. Acuff, 826 S.W.2d 920, 922 (Tenn. Ct. App. 1991) ("the trial judge must find a material change in circumstances that is compelling enough to warrant the dramatic remedy of changed custody."). The only change that has occurred in this case is Mr. Patterson's remarriage. That is not a sufficient change to warrant the trial court's actions.

Finally, even if a material change did exist, we are not persuaded that taking these children from their home in Memphis was in their best interests. These children have resided with their father since the divorce. The record provides no indication that their welfare has ever been an issue. Ultimately, in a custody dispute, the children's best interests must prevail. The evidence contained in the record fails to provide a reasonable basis for a change of custody. Any problems with visitation or Ms. Patterson's parental rights should have been addressed in a manner which was less traumatic and intrusive to the children's lives.

### Conclusion

For the foregoing reasons, the decision of the trial court changing primary physical custody is reversed. The original custody arrangement is re-instated, with primary physical custody of the minor children to be with Stephen Patterson. Costs of this appeal shall be taxed to the appellee, Susan A. Patterson, for which execution may issue if necessary.