# FILED

**October 15, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

# IN THE COURT OF APPEALS OF TENNESSEE
# AT NASHVILLE

| | | |
|---|---|---|
| TIMOTHY SCOTT McCAIN, | ) | |
| | ) | |
| Plaintiff/Appellee, | ) | Rutherford Chancery |
| | ) | No. 94DR-921 |
| VS. | ) | |
| | ) | Appeal No. |
| LISA MARIE GRIM, | ) | 01A01-9711-CH-00634 |
| | ) | |
| Defendant/Appellant. | ) | |

APPEAL FROM THE CHANCERY COURT
FOR RUTHERFORD COUNTY
AT MURFREESBORO, TENNESSEE

THE HONORABLE ROBERT E. CORLEW, III, CHANCELLOR

For Plaintiff/Appellee:

Phillip M. George
Smyrna, Tennessee

For Defendant/Appellant:

Charles G. Ward
Murfreesboro, Tennessee

# REVERSED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This appeal presents a post-divorce dispute over the custody of two children. When the parties were divorced in 1994 in the Chancery Court for Rutherford County, the father agreed that the mother should have sole custody of the children. Three years later, after learning that the mother and her new husband planned to move to North Carolina, the father petitioned for a change of custody. Following a bench trial, the trial court concluded that there had been a material change in the children's circumstances and that the father was comparatively more fit to have custody of the children. Accordingly, the trial court changed the custody of the children to the father. The mother asserts on this appeal that the evidence does not support the trial court's decision to change custody. We agree and, therefore, reverse the trial court's order awarding custody of the children to the father.

## **I.**

Lisa M. Grim and Timothy S. McCain were married in June 1986 in Davidson County. Ms. Grim, who was on active duty with the United States Army, was twenty years old at the time, and Mr. McCain was then twenty-two years old. Ms. Grim later transferred to the Tennessee National Guard, and Mr. McCain became employed as an air traffic controller at the Smyrna airport. They had two children together, Matthew who was born in February 1988 and Jessica who was born in January 1991.

The parties separated in February 1994 and later executed a marital dissolution agreement providing that Ms. Grim would receive sole custody of the children and that Mr. McCain would pay $461.44 per month in child support. Ms. Grim filed her complaint for divorce in the Chancery Court for Rutherford County on the day after Mr. McCain executed the marital dissolution agreement. In November 1994, the trial court entered an order granting Ms. Grim a divorce on the ground of irreconcilable differences and approving the parties' marital dissolution agreement. Accordingly, Ms. Grim and the two children continued to live in the family home in Smyrna which

she received under the terms of the marital dissolution agreement.

Ms. Grim married Darren Grim in September 1995. Mr. Grim is a career member of the United States Army assigned to the Golden Knights Parachute Team. He had been married previously and had two children from this marriage who lived in North Carolina. In May 1996, Mr. McCain married Sherry McCain, an elementary school teacher in Smyrna. Sherry McCain had been married before and had custody of two children from the previous marriage. The McCains, like the Grims, continued to live in Smyrna; however, in December 1996, the Grims moved to Nashville.

Ms. Grim ended her full-time employment with the National Guard in order to be more available to her children. Later, in 1997, Mr. Grim learned that had been transferred to Fort Bragg in Fayetteville, North Carolina and that he was expected to report for duty there on December 1, 1997. The Grims decided to move to North Carolina in October 1997 in order to enable Ms. Grim to pursue some part-time employment opportunities and to minimize the disruption to the children's schooling. Soon after Ms. Grim informed Mr. McCain of the planned move, Mr. McCain petitioned the trial court to change the existing custody arrangement because Mr. Grim "has been abusive toward the children by engaging in activities that have caused them physical and mental harm" and because the Grims were "threatening to move the children again out of state to North Carolina." Ms. Grim responded by denying that Mr. Grim had abused the children and by admitting that she and Mr. Grim planned to move to North Carolina. She also alleged that Mr. McCain had not been paying child support and that the amount of Mr. McCain's child support payments should be increased because his income had substantially increased.

The trial court conducted a bench trial on September 30, 1997. Following the conclusion of the proof, the trial court announced its conclusion that the parties' circumstances had changed significantly following the entry of the initial custody decree. In the court's estimation, this change was brought about "collectively" by

(1) the remarriage of both parents, (2) the "interactions" of the children with their step-parents, (3) Ms. Grim's moves to Nashville and North Carolina during the children's school year, and (4) the circumstances surrounding the "lifestyles of each of the parties and their new families." After concluding that both step-parents and both homes were satisfactory, the trial court decided that Mr. McCain was comparatively more fit than Ms. Grim to have custody of the children and, therefore, that Mr. McCain should receive sole custody of the children. Ms. Grim has appealed.

## II.

Ms. Grim asserts that the evidence preponderates against the trial court's conclusion that there had been a material change in circumstances following the divorce and that the children's interests would be best served by awarding custody to Mr. McCain. We agree that no material change in circumstances has occurred.

Children have an ongoing need for continuity and stability in their parental relationships. *See Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997); *Hill v. Robbins*, 859 S.W.2d 355, 358-59 (Tenn. Ct. App. 1993).[1] Accordingly, parents seeking alteration of an existing custody arrangement must overcome a strong presumption in favor of the original custody award. *See Taylor v. Taylor*, 849 S.W.2d 319, 332 (Tenn. 1993). To overcome this presumption, the parent must demonstrate first that the child's circumstances have changed materially and second, that the child's interests will be served best by modifying the existing custody arrangement. *See Adelsperger v. Adelsperger*, 970 S.W.2d at 485. The courts should not engage in a best interests analysis without first satisfying themselves that there has been a material change in the child's circumstances.

Some ambiguity exists concerning the meaning of "material change in circumstances." There are no hard and fast rules for determining when a change of circumstances will be deemed material. *See Taylor v. Taylor*, 849 S.W.2d at 327;

*Dantzler v. Dantzler*, 665 S.W.2d 385, 387 (Tenn. Ct. App. 1983). As a general matter, a material change of circumstances must involve the child's circumstances, not the circumstances of either or both of the parents. It must also involve facts or circumstances (1) that arose after the entry of the custody order sought to be modified, *see Turner v. Turner*, 776 S.W.2d 88, 90 (Tenn. Ct. App. 1988), (2) that were not known or reasonably anticipated when the underlying decree was entered, and (3) that affect the child's well-being in some material way. *See Geiger v. Boyle*, No. 01A01-9809-CH-00467, 1999 WL 499733, at *3 (Tenn. Ct. App. July 16, 1999) (No Tenn. R. App. P. 11 application filed); *Dalton v. Dalton*, 858 S.W.2d 324, 326 (Tenn. Ct. App. 1993). Using these standards, we will now examine the four factual bases for the trial court's conclusion that there had been a material change in circumstances in this case.

## A.
## The Remarriage of Both Parties

The first factual basis for the trial court's conclusion that there had been a material change of circumstance is that both Mr. McCain and Ms. Grim married again following their divorce. When the parties divorced in 1994, common experience indicated that they would marry again.[2] Because their remarriages were reasonably anticipated, they are not the sort of change of circumstances that will trigger a reconsideration of an existing custody arrangement. *See Arnold v. Arnold*, 774 S.W.2d 613, 618 (Tenn. Ct. App. 1989).

## B.
## The Children's "Interactions" with their Step-parents

Even though a parent's remarriage will not, by itself, trigger a consideration of a change of custody, the changes in the home environment brought about by a later marriage may amount to a material change of circumstances if these changes have a materially adverse effect on the child in some material way. *See Tortorich v. Erickson*, 675 S.W.2d 190, 192 (Tenn. Ct. App. 1984). Thus, a parent seeking to

alter an existing custody arrangement may trigger a fresh comparative consideration of the parents' fitness by demonstrating that the custodial parent's remarriage has or will have an adverse effect on the child. *See Smithson v. Eatherly*, 1999 WL 548586, at *5.

We confess to having some difficulty discerning what the trial court was referring to when it rested its conclusion that there had been a material change in the children's circumstances on their "interactions" with their step-parents. The trial court could not have been comparing the children's relationship with their step-parents because such comparisons, while proper during the comparative fitness stage of the analysis, would have been inappropriate when determining whether there had been a material change in the children's circumstances. Therefore, we can only conclude that the trial court was alluding to the "swirly incident," the "marker incident," and the manner in which Mr. Grim disciplined the children early in the marriage.

All these circumstances, taken together, do not amount to a material change in the children's circumstances because there is no evidence that they materially affected the children.[3] After hearing the proof concerning these matters, the trial court found the evidence "favored neither party" and that both step-parents and homes were "satisfactory." The trial court also found that both step-parents cared for and were concerned about the children. While the trial court stated that the evidence "hint[ed] at a less than perfect relationship" between Mr. McCain and Mr. Grim, it did not find, and the record does not contain evidence, that the relationship between the two men has affected or will affect the children's circumstances in any material way.

## C.
### The Moves to Nashville and North Carolina

The third factual basis for the trial court's finding that there had been a material change in the children's circumstances was the Grims' move from Smyrna

to Nashville and their contemplated move from Nashville to Fayetteville, North Carolina. The trial court's reliance on these moves is misplaced. Moving, in and of itself, is not a change of circumstances that warrants modifying an existing custody arrangement. *See Taylor v. Taylor*, 849 S.W.2d at 332; *Adelsperger v. Adelsperger*, 970 S.W.2d at 486 n.2.

As with the proof regarding the children's relationship with their step-parents, the trial court compared the Grim household with the McCain household while determining whether the Grims' contemplated move to North Carolina was a material change in circumstances. The court should have determined whether Ms. Grim's leaving Smyrna could reasonably have been anticipated at the time of the original custody arrangement and whether her move would materially affect the children's well-being.

Custody decisions should, to the greatest extent practicable, shield children from the adverse effects of divorce and should place the children in circumstances that provide them the best chance to develop into healthy, adjusted, and productive members of society. However, it is unrealistic for courts to undertake to devise custody arrangements that will shield children from the vicissitudes of growing up in contemporary American society, including the prospect that their family may move from familiar to new surroundings. *See Yeager v. Yeager*, No. 01A01-9502-CV-00029, 1995 WL 422470, at *3 (Tenn. Ct. App. July 19, 1995) (No Tenn. R. App. P. 11 application filed).

It was not unthinkable at the time of the 1994 divorce hearing that Ms. Grim might at some point move away from Smyrna. Her military background and employment created this possibility. There is no evidence in the record that the original decision to award her custody was based on her assurance that she would not move from Rutherford County at any time in the future. Likewise, the record contains no evidence that the Grims' decision to move from Smyrna to Nashville or their contemplated move to Fayetteville, North Carolina will have a materially adverse effect on the children. The record also lacks evidence that the Grims' decision to

move from Smyrna to Nashville or from Nashville to North Carolina were motivated by any sort of improper motive.[4]

## D.
## The Lifestyles of the Parties

The final factual basis for the trial court's finding that there had been a material change of circumstances was its comparison of the "lifestyles of each of the parties and their new families." The court should have focused on the Grims to determine whether any aspect of their current "lifestyle" was adversely affecting the children in a material way. The trial court effectively answered this question in the negative when it found that both homes and step-parents were "satisfactory."

We have carefully reviewed the evidence for any indication that living in the Grim household would adversely affect the children. While the record paints a picture of different home environments and clear differences between Mr. McCain and Mr. Grim, we find no evidence to support a conclusion that the children would be harmed, physically or emotionally, if they continued to live in the Grim household. To the contrary, Mr. Grim and Ms. Grim have made the children their top priority. Ms. Grim changed her work schedule to spend more time with the children. For his part, Mr. Grim helps with the children's homework, is active in the PTA, helps get the children ready for school, and helps cook their meals. Both parents take the children roller skating, boating, snow skiing, bike riding, and to the movies.

Mr. Grim is an active member of the military who is attached to an elite parachute unit. He appears to be an active, rugged individual who enjoys horseplay and outdoor activities. He has involved himself in the children's lives, and the children and Mr. Grim appear to have regard and affection for each other. The early disagreements over proper discipline between Mr. Grim and Ms. Grim have been resolved, and there is no evidence that the children have been adversely affected in

any way.

The evidence does not support the trial court's conclusion that a material change of circumstances occurred between 1994 and 1997 warranting a reconsideration of its earlier decision to award Ms. Grim custody of the parties' two children. Accordingly, the trial court erred by comparing the fitness of the Grim household and the McCain household, and by determining that the children's interest would be best served by altering the existing custody arrangement and awarding custody to Mr. McCain.

## III.

For the reasons stated herein, we reverse the order changing custody of the children from Ms. Grim to Mr. McCain and remand the case to the trial court for the entry of an order denying Mr. McCain's request for a change of custody. We tax the costs of this appeal to Mr. McCain for which execution, if necessary, may issue.


_____                   WILLIAM C. KOCH, JR., JUDGE


CONCUR:


_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION


_____
BEN H. CANTRELL, JUDGE