IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 8, 2003 Session

## THOMAS JOSEPH DOUGHERTY v. JOYCE ELAINE PARRY DOUGHERTY

**Appeal from the Circuit Court for Sumner County**
**No. 16119-C     C. L. Rogers, Judge**

_____

**No. M2002-00757-COA-R3-CV - Filed February 26, 2003**

_____

A divorced father petitioned the court to transfer custody of his two children from his former wife to himself. The trial court dismissed the petition, finding that the father had not met the threshold requirement for change of custody by proving a material change of circumstances. We find that there has been such a change of circumstances, and we remand this case to the trial court with instructions to determine the best interest of the children.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J. and DON R. ASH, SP. J., joined.

Michael W. Edwards, Hendersonville, Tennessee, for the appellant, Thomas Joseph Dougherty.

Louis W. Oliver, Hendersonville, Tennessee, for the appellee, Joyce Elaine Parry Dougherty.

**OPINION**

### I. MARRIAGE, CHILDREN, DIVORCE

Thomas Dougherty and Joyce Parry Dougherty married in 1986. Both had been previously married, and the wife had two children from her earlier marriage. The parties made their home in Hendersonville. On August 14, 1989, the wife gave birth to Jessica Paige Dougherty, the first child born to this marriage. Unfortunately, all was not well between the parties. On October 31, 1996, Joyce Dougherty filed a Complaint for Divorce in the Circuit Court of Sumner County, in which she asked for custody of Jessica. The husband filed an answer and counterclaim for divorce. He also asked for custody of the child.

Ms. Dougherty was pregnant when she filed for divorce. The parties' second child, Thomas Austin Dougherty, was born on March 4, 1997. After their son was born, the parties attempted a reconciliation. When this failed, they turned their attention to forging a Marital Dissolution Agreement (MDA) that would resolve all issues of custody, property and support.

The parties appeared before the trial court on October 8, 1998. The court found that the MDA had made an equitable settlement of all property rights between the parties, as well as of the custody and support of the children. The court awarded the wife an absolute divorce on the grounds of irreconcilable differences, and incorporated the MDA into the Final Decree of Divorce.

The relevant provisions of the MDA for the purposes of this discussion are as follows: the parties were given joint legal custody of the children, with the wife to have primary physical custody, subject to the husband's right of visitation every other weekend, and every Tuesday and Thursday evening. The husband was to pay $550 per month in child support, and an additional $103 as reimbursement to the wife for payment of the children's medical insurance. The wife was to receive the marital home, and to assume all responsibility for future mortgage payments. The parties agreed that neither would pay alimony to the other.

## II. A PETITION FOR CHANGE OF CUSTODY

The parties were able to cooperate fairly well on visitation and other matters after the divorce, although there were still some hard feelings between them. The father began seeing another woman, whom he married on April 25, 2001. His new wife, Deborah, has two children from an earlier marriage. Those children live during the week with her former husband in Lebanon, and visit on weekends. Deborah's younger daughter is the same age as Jessica.

Jessica had a difficult time adjusting to her parents' divorce from the very beginning. She wanted things to be the way they were before the divorce, and would get upset whenever her mother tried to change anything in the house. Even an attempt to paint her mother's bedroom brought on tears. After her father remarried, Jessica frequently returned from weekend visitation to tell her mother that she wanted to live with her father, and that he was willing to take her. Out of frustration, the mother told Jessica several times to pack her things and do just that.

The proof showed that the mother had developed a contentious relationship with Deborah Dougherty even before the marriage. She believed, apparently on the basis of something Jessica told her, that her ex-husband's new wife had acted abusively towards Jessica and Austin. Tom and Deborah Dougherty both denied that anything abusive had occurred, as did Jessica when she was put on the stand. At some point Joyce went to Deborah's place of work at Lowe's in Madison, and placed four nails beneath her tires as some kind of warning. Her actions were captured on videotape. As a result, she had to appear before the District Attorney and participate in some kind of mediation.

In May of 2001, the mother called the father and told him to come and get their daughter, and hire a lawyer to prepare an agreed order for a change of custody. On May 8, 2001, the father filed

the petition that is the subject of this appeal. He asked the court to give him primary physical custody or sole custody of both Jessica and Austin. The mother changed her mind about a week later, and phoned Jessica to tell her she had to come back.

On December 15, 2001, the mother married Royce Dugan, and took her new husband's last name. She and Mr. Dugan moved to a home he had recently built in White House, Tennessee, about twenty miles from Hendersonville. Royce Dugan has three children from an earlier marriage. He has custody of the youngest of them, a twelve-year-old boy.

The mother was a nurse, and she worked at Hendersonville Hospital. She kept her house in Hendersonville for the use of her older children (ages 18 and 20), and for her own use, as a place to wait for the younger children to come home from school on her workdays. Because her mother retained the house, Jessica was able to continue going to school in Hendersonville. But she was unhappy because her friends all lived in Hendersonville, and she didn't know anyone in White House.

### III. PROCEEDINGS IN THE TRIAL COURT

The hearing on the father's petition was conducted on February 26, 2002. The testifying witnesses were Jessica Dougherty, her mother and father, Deborah Dougherty, Royce Dugan, a friend of the mother's, and Ashley Parham, the mother's 17-year-old daughter from her first marriage.

Jessica testified outside the presence of her parents. She said she wanted to live with her father, and that even if her mother moved to Hendersonville, she would still prefer to live with him. She denied all allegations of abuse by Deborah Dougherty, but testified that she had witnessed an angry argument between her mother and her new husband, and several between her mother and her half-brother.

The father testified that the mother had "flashed" him twice, by lifting her top when he came to the house to pick up the children. The mother denied that any such thing had taken place. She admitted to putting the nails under Deborah Dougherty's tires, and that it was inappropriate for her to do so. She also said that out of frustration she had agreed to let the father take Jessica, and indicated that she was now determined to retain custody of her daughter, regardless of the girl's wishes.

At the conclusion of the proof, the trial judge took the case under advisement. The following day, he filed an order dismissing the father's petition. The judge found that the only basis for the petition was Jessica's desire to live with her father, and that "the mere preference of the 12- year-old fails to address the preliminary requirement of a material change in circumstances not reasonably foreseeable." This appeal followed.

### IV. A MATERIAL CHANGE OF CIRCUMSTANCES

A trial court trying a divorce case must always make its custody determination "upon the basis of the best interests of the child." Tenn. Code Ann. § 36-6-106. A custody decree "shall remain within the control of the court and be subject to such changes or modifications as the exigencies of the case may require." Tenn. Code Ann. § 36-6-101(a)(1). Thus, either party may petition the court for a modification of custody, and the court may order such a modification in accordance with the exigencies of the case.

To prevent parents from trying to get custody decisions reversed for light or frivolous reasons, the petitioning party must meet the threshold requirement of proving that there has been a material change of circumstances that affects the welfare of the child or children, and which could not have been anticipated by a former decree. *Dalton v. Dalton*, 858 S.W.2d 324 (Tenn. Ct. App. 1993). Only after such a change of circumstances has been proven, may the court reconsider the best interest of the children, and fashion a new custody order consistent with that best interest.

Our courts have ruled on several occasions that the remarriage of a parent does not in and of itself constitute a material change sufficient to meet the threshold requirement. *See Arnold v. Arnold*, 774 S.W.2d 613 (Tenn. Ct. App. 1989); *Tortorich v. Erickson*, 675 S.W.2d 190 (Tenn. Ct. App. 1984). However, "the possible change in home environment caused by such remarriage is a factor to be considered in determining whether or not there has been a material change in circumstances that would warrant an alteration of custody arrangements." 675 S.W.2d at 192.

We note that neither party in the present case alleged that the other was an unfit parent at the time of divorce, and there are no indications in the record that remarriage has rendered either unfit for the responsibilities of parenthood. However, aside from the new spouses, five additional children came into the picture as a result of the two remarriages. Even though Deborah Dougherty does not have primary custody of her two children, and Royce Dugan has custody of only one of his three, all the children are affected by the remarriage of their parents, and the parents themselves are facing the daunting challenge of blending their families in a harmonious way.[1]

The strain of this challenge may have something to do with the mother's admitted frustration. In any case, it appears to us that the friction between Jessica and her mother has a detrimental effect on both of them. The fact that the father's Petition to Modify Custody was filed at the prompting of the mother is a telling point. And even though the mother ultimately changed her mind, it appears to us that the circumstances that led her to suggest a change of custody are sufficient to meet the threshold requirement for such a change.

---

[1] For the mother, the challenge is increased by the special needs of her younger child. Austin Dougherty has had some developmental problems that are being addressed by enrollment in a school for children with such problems. It appears that he may need more attention than most children his age.

We accordingly remand this case to the trial court for consideration of Jessica's best interest in light of the factors set out in Tenn. Code Ann. § 36-6-106.[2] We note that the court's analysis must take "new evidence" into account. It is not sufficient to revisit the situation of the parties at the time of the court's last hearing, since the most current circumstances of the parents and of the child are also the most relevant for determination of the child's best interest.

## V.

The order of the trial court is reversed. Remand this cause to the Circuit Court of Sumner County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellee, Joyce Dugan.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.

---

[2] Although the father petitioned for custody of both children, he testified that he had no fears or trepidation about splitting them up, if that was the court's decision. The dispute between the parties is overwhelmingly about the custody of Jessica.