**Virginia (Robbins) HILL, Petitioner–Appellant,**

v.

**Terry Len ROBBINS, Respondent–Appellee.**

Court of Appeals of Tennessee, Eastern Section.

May 14, 1993.

Permission to Appeal Denied by Supreme Court Aug. 2, 1993.

**356**

Douglas R. Beier, Evans & Beier, Morristown, for petitioner-appellant.

Christopher P. Capps, Capps, Cantwell & Capps, Morristown, for respondent-appellee.

## OPINION

FRANKS, Judge.

The mother moved the parties' children from Morristown, Tennessee, to Erie, Pennsylvania, and filed a petition asking the Court to modify the final decree to allow the minor children, ages 9 and 7, to reside outside the State.[1] The father filed what is labeled a "Cross–Petition for Contempt and Change of Custody" alleging that the mother had removed the children from the State without the Court's permission, and alleged "Petitioner would show unto this Court that this is a major change of circumstances not contemplated by the marital dissolution agreement, which he feels justifies a change of the primary physical custody of the minor children from respondent to petitioner".

Following an evidentiary hearing, the Trial Judge found the mother in contempt, but reserved punishment.[2] The Trial Court further ordered that the father become the primary physical custodian of the children "until such time as the wife [sic] relocates to this State.... If she chooses to remain in Pennsylvania, then, so be it." The Trial Court stayed its judgment and the mother appealed.

■ Any agreement or arrangement concerning the custody of minor children is subject to modification, and in this case the mother, who was seeking approval of removing the children from the state, had the burden to establish her case by a preponderance of the evidence. *Rogero v. Pitt*, 759 S.W.2d 109 (Tenn.1988). The mother remarried in January of 1992 and was employed as a loan clerk at the First Tennessee Bank in Morristown. Her husband was employed at the bank as a courier, doing menial jobs. After her marriage, the mother and her husband began considering better job opportunities in Nashville or Memphis. The mother testified there was no opportunity for advancement in the local bank, and her husband testified that he could find no other employment in the Morristown area. The mother is a native of Illinois,[3] and her extended family continues

---

1. The parties were divorced on August 10, 1990, and the final decree incorporated the marital dissolution agreement which provides, in pertinent part: "Wife agrees not to move from the State of Tennessee with the children during their minority; however, *if husband moves from the State of Tennessee, this restriction will no longer apply to wife and she may move with the children from the State.*" (Emphasis supplied).

2. A trial court which holds a party in contempt may not reserve punishment in futuro. *Mayer v. Mayer*, 532 S.W.2d 54 (Tenn.App.1975).

3. The parties had resided in Illinois during their marriage and moved to Morristown when the father's "job deteriorated in Illinois". Interestingly, when they moved to Morristown they

to live in Illinois. She has no family or other ties to the Morristown area. The paternal grandmother and her husband[4] had lived in Morristown from 1977 until their relocation to Pennsylvania in the summer of 1992, when the step-grandfather became a general manager of a division of Plastec, in Erie Pennsylvania. The paternal grandparents had been very supportive of the mother and the children, and established a close relationship with the children. The grandparents advised the mother and her husband of job opportunities in Pennsylvania, and encouraged them to relocate. The husband was offered a job with the paternal grandfather's company.

The mother and her husband moved to Erie, Pennsylvania in August of 1992, where she immediately became employed in the commercial loan department of a bank in Erie. She testified she has good opportunities for advancement with that bank. Her husband did not accept the job with the grandfather's company, but obtained employment as a production control clerk at Modern Industries. He testified that his job in Morristown was a dead end job, and that there were more job opportunities in Pennsylvania. The step-father testified:

"Q. Well, take us to the decision to move to Pennsylvania. How did that come about?

A. Well, what it came down to is that, pertaining to my job, my job was a dead-end job. There was nowhere to advance to. And, now, I don't want to speak on behalf of my wife, but she was in the same boat. And we knew that their grandparents, the kid's grandparents, were moving to Erie. And, you know, we—I guess—I guess what I'm trying to say is that I—My opinion is it was in the best interest to move to Erie. After looking at, you know, all the other facts, it was in the best interest of the children."

The father who has also remarried testified:

moved into the home of the paternal grandparents for a time, upon relocating to Tennessee.

"Q. Well, they were close to their grandparents when they were living here; weren't they?

A. Yes.

Q. As a matter of fact, the last time we were in court, your parents lined up with you to get specific visitation?

A. Yes.

Q. And the children are close to their mother?

A. Yes. I assume so.

Q. She's been their primary caretaker ever since the divorce?

A. Yes.

. . . . .

Q. Mr. Robbins, don't you think it's in the best interest of the children to remain with their mother who's been their primary caretaker?

A. No, sir.

Q. Why not?

A. I believe, also, the way our judicial system is set up the mother is the primary caretaker, but there is a lot of fathers that step forward and can take care of a child just as well as a mother can. Not only do they have that mother, they have a step-mother that's willing to take very good care of them.

Q. They've always been happy with their mother; haven't they?

A. As far as I know."

At the conclusion of the trial, the Trial Judge observed in his bench opinion:

"It would be better for the children if they should be allowed to live in Pennsylvania, since they have been uprooted from Tennessee and re-established in their new home in Pennsylvania, but this situation did not exist when the move was made. There were no waiting jobs, only the expectation or hope of a job, and that at the largess of paternal grandfather. The move, beyond any doubt, was precipitated by the paternal grandparents' desire to have the children with them."

4. The paternal step-grandfather married the paternal grandmother when the children's father was 10 years old.

The Trial Judge rejected the mother's testimony that the move was "motivated and consummated for financial reasons". The Court's conclusion is primarily based on the fact that the mother is making a few cents less per hour in her new job, and her husband is only making slightly more per hour in his new job. He concluded, taking into account the "cost of living differential as between Tennessee and Pennsylvania, the wife and her new husband are in effect earning less in Pennsylvania than they did here in Tennessee." It is undisputed that the mother and her husband were seeking other job opportunities before their relocation to Pennsylvania, and among the places being considered was Memphis, some 400 miles from Morristown. The evidence is not disputed that there are opportunities for job advancement in Pennsylvania which did not exist in Morristown as well as excellent schools.

■ It should be noted that *Taylor v. Taylor*, 849 S.W.2d 319, (Tenn.1993) was decided subsequent to the trial of this case, and summarizes the factors to be considered in a removal dispute:

"They include (but are not limited to) a recognition that in removal cases, the question of custody is not subject to de novo review, unless the petition cites reasons other than removal as grounds for change of custody; that there is a strong presumption in favor of continuity of the original custody award; that the welfare of the child is affected by the welfare of the custodial parent, and that the best interest of the child must be reviewed in order to determine the advantages of the move to the child; that removal of the child from the jurisdiction may require rescheduling of the non-custodial parent's visitation, but that removal is not, in and of itself, a change of circumstances sufficient to justify modification of the custody order; that the courts must be sensitive to the non-custodial parent's efforts to maintain his or her relationship with the children and that visitation should be arranged in a manner most likely to enhance that relationship; and, finally, that the motives of the custodial parent in making the move must appear to be valid, that is, not intended to defeat or deter visitation by the non-custodial parent. These factors and any related factual circumstances found by the court to be significant in a given situation, must be weighed individually and collectively."

The Court continued as pertinent here: "If, on the other hand, the custodial parent files for relief, seeking to lift a prior prohibition on removal or asking the court's permission to move from the jurisdiction, or both, the custodial parent has the burden of proving that removal is in the child's best interest."

The Trial Judge's basis for his decision was "that the grandparents initiated the children's removal so they could maintain a relationship with the children. I understand their desire ... but on the other hand, by them [sic] maintaining their relationship with the children in that regard, it has effectively severed for all practical purposes the relationship of the father and children. That relationship the law recognizes to be superior to the relationship of grandparents and grandchildren". But this analysis does not focus upon the determinative issue, i.e., the best interest of the children. As *Taylor* notes, custody decisions are to be based upon the welfare and happiness of the children involved. Moreover, the happiness and well-being of the custodial parent is an "ingredient" of the welfare and happiness of the children. *Id.* The evidence preponderates that it is in the children's best interest to approve their relocation with their mother. The sole ground for a change of custody advanced by the father in his complaint was the removal of the children from the State by the mother. It this regard *Taylor* said:

"These cases, and others like them, reflect the collective wisdom of both the courts and child psychologists of the children, especially those subjected to the trauma of a divorce, need stability and continuity in relationships most of all. This recognition has led to a strong presumption in favor of continuity of placement, which is reflected in the well-established rule that courts will not entertain

petitions for change of custody unless there has been some change in circumstances that has rendered the custodial parent unfit or has exposed the child to some form of risk. In the view of the overwhelming number of American courts, the custodial parent's relocation, all other factors being equal, is not such a 'change of circumstances' because it does not inherently affect the fitness of the custodial parent."

There is no suggestion, nor did the Court find that the mother became an unfit parent by moving before she gained modification of the marital settlement agreement, although her actions are not condoned or viewed with favor. Parenthetically there was evidence the father had violated the marital settlement agreement. The evidence on the factors set forth above support leaving custody with the mother.

The cause is remanded to the Trial Court for the entry of an order modifying the final judgment to allow removal of the children from the State and for a further hearing to establish proper visitation with the father. The order of visitation shall include a provision that the grandparents who are also before the Court, and the mother, shall be jointly responsible for paying all of the travel expenses pursuant to visitation with the children's father.

The costs of appeal are assessed one-half to the appellant and one-half to the appellee.

LEWIS, J., concurs.

SANDERS, P.J. (E.S.), not participating.

### ORDER OF SUPREME COURT OF TENNESSEE

PER CURIAM.

Upon consideration of the application for permission to appeal and the entire record in this cause, the Court is of the opinion the application should be denied and the cause remanded to the trial court for imposition of punishment for the trial court's prior finding of willful contempt of the provi-

sions of the divorce decree by appellee, Virginia Robbins Hill.