# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

AMY (KELLEY) SMITH,                )
                                   )
    Plaintiff/Appellee,            ) Williamson Chancery No. 24120
                                   )
VS.                                ) Appeal No. 01A01-9711-CH-00657
                                   )
ALTON WADE KELLEY,                 )
                                   )
    Defendant/Appellant.     )

**FILED**

October 27, 1998

Cecil W. Crowson
Appellate Court Clerk

APPEAL FROM THE CHANCERY COURT OF WILLIAMSON COUNTY
AT FRANKLIN, TENNESSEE
THE HONORABLE HENRY DENMARK BELL, CHANCELLOR

**J. RUSSELL HELDMAN**
Franklin, Tennessee
Attorney for Appellant

**JAMES L. CURTIS**
Nashville, Tennessee
Attorney for Appellee

**AFFIRMED**

                            **ALAN E. HIGHERS, J.**

**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**

Defendant, Alton Wade Kelley ("Appellant" or "Husband"), appeals the trial court's order allowing Plainitff, Amy Kelley Smith ("Appellee" or "Wife"), to relocate to Texas with the parties' minor child, Robert Wade Kelley, declining to change custody of the minor child to Husband, declining to award Husband attorneys fees, and declining to dismiss Wife's motion under 12(b)(6). Wife appeals the portion of the trial court's judgment which set the new visitation schedule for Husband.

## I. Factual and Procedural History

The parties in this action were divorced on October 11, 1996. A Marital Dissolution Agreement ("MDA") was incorporated into the final decree of divorce. There was only one child born of the marriage. The decree provided that the parties would share joint custody of the child, with Wife having actual physical custody of the minor child. The Final Decree granted Husband liberal visitation privileges, providing him about 180 days of visitation per year. The Final Decree also stated that "the parties agree not to move more than sixty miles from Nashville, Tennessee."

On July 4, 1997, Wife was married to Jim Smith ("Smith"). Smith was employed by General Mills in Dallas, Texas. Shortly after their marriage, Wife filed a Petition to Modify requesting that she be allowed to move the parties' child, then age 2 ½, to Texas to reside with her and her new husband. Husband filed a motion to dismiss Wife's petition for Failure to State a Claim Upon Which Relief Can Be Granted. The trial court found that the petition was the proper way for Wife to exercise her desire to remove the child from the state and dismissed Husband's motion. In response to Wife's motion, Husband filed a complaint to Change Custody, Visitation and Child Support and for Injunction and Other Relief.

At the time of the hearing, Wife had obtained a new job with International Paper in Dallas with a $6,000 increase in pay plus additional bonuses. Wife and her new husband had made plans to purchase a house in a city just north of Dallas. Also, Wife testified that she had checked into schools in the McKinney area and had enrolled the child in a private day school. Wife contends that, at the time their MDA was written, she had no plans to remarry or to move to another state. Husband contended otherwise.

Both Wife and Husband testified that they worked to accommodate each other while attending to their

2

child. Wife contends that she is the primary care giver. Wife further testified that she is ready to transport the parties' child however often is necessary to keep Husband involved in the child's life.

The parties' child has febrile seizures on occasion. Husband is concerned that Smith has no idea of how to handle such seizures. Also, Husband testified that the child's pediatricians are in Brentwood, Nashville, and Columbia, and that these doctors are familiar with the child's condition. As such, Husband contends that this would not be in the child's best interest and would be a material change in circumstances to uproot the child from Tennessee to Texas. Wife testified that she had a referral for a doctor in a Dallas suburb, and that Smith could be taught how to deal with the child's seizures.

Husband testified that he wanted the child to have continued contact with his family in Tennessee. He stated that the child has a good relationship with both Wife's and Husband's family and that they all reside in Tennessee. He also desires for the child to attend the schools that he attended in the Nashville area.

Both parties testified on their own behalf along with various other witnesses. A great deal of the testimony dealt with what is in the best interest of the parties' child. At the close of all the evidence the trial court rendered its decision. The trial court found that although the MDA labeled the parties' custody of the child as "joint custody," the Husband's periods of placement were referred to in the agreement as "Child Visitation" and Husband was paying support for the child. The trial court therefore determined Wife to be the "custodial parent" and Husband was determined to be the "non-custodial parent." The trial court then ruled that Wife should be allowed to remove the child to another state although Husband should be awarded the same amount of visitation as provided for in the MDA. The trial court then ordered both parties to present visitation proposals to the court. The trial court at a subsequent hearing approved a visitation schedule which awarded the Husband 170 days visitation with the child, and ordered Wife to provide all transportation costs.

Husband appeals from this judgment. Wife appeals the portion of the judgment which set visitation at 170 days.

## II.  Husband's Motion to Dismiss

3

Husband contends that the Chancellor erred in failing to dismiss Wife's Petition to Modify for failure to state a claim upon which relief can be granted. He argues that nowhere in Wife's petition does she ask the court to modify the Final Decree of Divorce to change the injunctive language therein. Rather, Wife's petition asks for permission to move the minor child to the State of Texas, and for Husband's visitation to be amended. Husband argues that since wife has alleged no substantial or material change of circumstances according to law which justifies any change in the locational restrictions found in the Final Decree of Divorce, a change cannot be made, and therefore her petition should have been dismissed.

Wife contends that Taylor v. Taylor, 849 S.W.2d 319, 332 (Tenn. 1993), specifically endorses this procedure of requesting from the trial court, in advance, permission to relocate. Wife also points to Tenn. Code Ann. §36-6-101(a) which states: "Such decree shall remain within the control of the court and be subject to such changes or modifications as the exigencies of the case may require."

A prior order restricting movement of child may be modified by agreement on motion to court having jurisdiction over matter, and subject to approval of that court, if noncustodial parent consents to removal of child from state and parties can agree on revised visitation arrangement. Taylor at 332. "If agreement between custodial parent and noncustodial parent regarding removal of child from state cannot be reached, burden of proof falls on parent who files petition seeking relief; noncustodial parent who seeks to prevent removal must show by preponderance of evidence . . ." Id.

In this case, Wife followed the proper procedure to seek the court's approval to remove the minor child from the state. The requirement that Wife need show a change of circumstances is relevant to change of custody determinations. Wife did not seek to change custody, but rather sought the court's permission to remove the minor child to Texas. The trial court committed no error in refusing to grant Husband's Motion to Dismiss for Failure to State a Claim Upon Which Relief can be granted.

### III.  Removal of Minor Child and Altering Visitation

Recent cases have addressed the law of removal and attempted to set forth parameters to be followed by the courts and the parties in such removal cases. In the case of Taylor v. Taylor, 849 S.W.2d 319 (Tenn.

1993), the Supreme Court of Tennessee was asked to reverse a decision of the trial court prohibiting the custodial parent from moving out of state with her three-year-old daughter, which move had been objected to by the father of the child. The Supreme Court laid out the procedure to be followed in these cases and the burdens which must be carried by the parties.

> If there is no outstanding order restricting movement of the child or children, and the parties can agree to a revised visitation schedule, the custodial parent is free to remove without seeking further court authorization. Likewise, if the non-custodial parent consents to the removal and the parties can agree on a revised visitation arrangement, a prior order of restriction may be modified by agreement on motion to the court having jurisdiction of that order and subject to the approval of that court.

> If agreement between the parties cannot be reached, under the procedural rule announced in Seessel and Nichols, the burden of proof falls on the party who files a petition seeking relief. In order to discharge that burden, the non-custodial parent who seeks to prevent removal must show by a preponderance of the evidence that removal is adverse to the best interest of the child or children involved. If, on the other hand, the custodial parent files for relief, seeking to lift a prior prohibition on removal or asking the court's permission to move from the jurisdiction, or both, the custodial parent has the burden of proving that removal is in the child's best interest. That burden can be shifted by a prima facie showing of a sincere, good-faith reason for the move and a prima facie showing that the move is consistent with the child's best interest.
> Id. at 332.

The Supreme Court in Taylor applied these substantive principles and procedural rules and came to the conclusion that the judgments of the trial court and the Court of Appeals must be reversed. The custodial parent properly petitioned the trial court to suspend its previously imposed restriction on removal and sought permission to move with the child to Davenport, Iowa. The Supreme Court stated that removal was warranted based on a well-established reason for the move-her remarriage to someone who was living, for an equally good reason, some distance from Memphis. The Court also stated that there was no suggestion in the record that the mother was anything other than a wholly fit person to have custody of child and there was no showing that the move would have adverse consequences to the child's health or well-being. The Supreme Court then stated as follows:

> It is obvious that the previously established schedule of visitation will have to be altered. There is no proof that this cannot be successfully accomplished to accommodate the interests of both parents, as well as the child's interest. There is nothing in the record to indicate that Deborah Mitten's conduct has been vindictive or that in proposing to move to Davenport, she intended to deprive Steve Taylor of his visitation rights or to interfere with his close relationship with his child.
> Id. at 333.

5

In the case of Aaby v. Strange, 924 S.W.2d 623 (Tenn. 1996), the custodial parent petitioned to move out of state with the child. The Supreme Court, in reversing the decisions of the trial and appellate courts, ruled that a custodial parent may remove a child to another jurisdiction unless noncustodial parent can show, by preponderance of evidence, that custodial parent's motives for moving are vindictive. Id. at 623.

The Supreme Court in Aaby stated that the ultimate message to be gleaned from Taylor is admittedly obscure. They felt that was evidenced by the fact that both parties in Aaby put forth arguments which found support in the text of the Taylor opinion, and by the trial court's obvious confusion as to its meaning. The Supreme Court further stated that because they had failed to "make determinate an area of law that has become increasingly unsettled," they must dispel the ambiguity of Taylor and clarify its impact on the law of removal. Aaby at 629.

> Although it drew upon authority from many other jurisdictions and dealt with a number of specific sub-issues, Taylor was fundamentally concerned with furthering two overarching goals in the law of removal: (1) *"limiting judicial intervention in post-divorce family decision-making, and (2) making disputes easier of resolution if they must be litigated."* Id. at 331 (emphasis added). We continue to believe that these goals must determine the law. Moreover, we believe that the traditional best interests of the child test, for the reasons enunciated in Taylor, makes these goals difficult or impossible to achieve. And we are convinced, again for the reasons stated in Taylor, that the interests of the custodial parent and the interests of the child are basically interrelated, even if they are not always precisely the same. Therefore, we conclude, as the mother insists, that a custodial parent will be allowed to remove the child from the jurisdiction unless the non-custodial parent can show, by a preponderance of the evidence, that the custodial parent's motives for moving are vindictive--that is, intended to defeat or deter the visitation rights of the non-custodial parent. Aaby at 629.

The Supreme Court then proceeded to set out the appropriate procedure for removal.

> With regard to procedure, we conclude that if the parties cannot agree on an acceptable visitation schedule, the custodial parent seeking to remove must file a petition with the court to reapprove or revise, as the case may require, the existing visitation schedule. In the hearing on the petition, the non-custodial parent may, if he or she wishes, present evidence that the custodial parent's motives for moving are vindictive; also, any petition for a change of custody based on the above-discussed grounds shall be heard at this time.
> Id. at 630.

In the case before this Court, there was a specific provision placed in the MDA which prohibited the parties from moving more than sixty (60) miles from Nashville, Tennessee. Husband first contends that there

exists no new circumstances which justify a change in the "sixty mile" residential restriction. He cites case law which holds that the "remarriage of either parent does not of itself constitute a change of circumstance that would warrant a change of custody." Tortorich v. Erickson, 675 S.W.2d 190, 192 (Tenn. Ct. App. 1984). While this statement of the law is correct, we point out that Wife was not seeking to change custody, but rather permission to remove the child from the state and a redetermination of visitation.

Husband contends that the removal language in the MDA is contractual in nature and should be enforced as written. He argues that the only way the agreement can be modified is pursuant to the modification clause in the MDA which states that the agreement can only be modified by the parties in writing. Husband contends that the Chancellor was therefore without authority, absent the parties' agreement, to permit this removal.

In Penland v. Penland, 521 S.W.2d 222, 224 (Tenn. 1975), the Supreme Court of Tennessee held that when a husband and wife contract with respect to the legal duty of child support, upon approval of that contract, the agreement of the parties becomes merged into the decree and loses its contractual nature. The Supreme Court stated that the reason for stripping the agreement of the parties of its contractual nature was the continuing statutory power of the Court to modify its terms when changed circumstances justify. Id. at 224. Trial courts have continued authority in post-divorce matters concerning the care, custody and control of children. Tennessee Code Annotated § 36-6-101(a) states: "Such decree shall remain within the control of the court and be subject to such changes or modifications as the exigencies of the case may require." Provisions which restrict where the child shall reside are provisions which concern the care, custody and control of the child. Therefore, the removal provision in the MDA was merged into the decree and lost its contractual nature. It may therefore be modified if the correct procedure is followed. Such procedures have been spelled out in Taylor and Aaby.

Husband contends that the Taylor and Aaby line of cases are not applicable to the case at hand. In this case there was a specific provision placed in the MDA which prohibited the parties from moving more than sixty (60) miles from Nashville, Tennessee. Neither Taylor nor Aaby contained a similar provision. However, in Taylor, there was a standing court order which prohibited the Mother from removing the child to another state.

7

When laying out the procedural framework for removal in Taylor, the Supreme Court stated, "If, on the other hand, the custodial parent files for relief, *seeking to lift a prior prohibition on removal or asking the court's permission to move from the jurisdiction, or both*, the custodial parent has the burden of proving that removal is in the child's best interest." Taylor at 332. (Emphasis added). While it was later clarified in Aaby that the burden rests upon the non-custodial parent to show a vindictive purpose for the move, the language in Taylor states that a parent may seek relief in the courts to lift a prior prohibition on removal. The Supreme Court did not limit such "prior prohibition on removal" to one placed upon the parties by the court in a prior proceeding. The language used by the Supreme Court is broad enough to encompass a prior prohibition on removal found in an MDA.

Additionally, in Hill v. Robbins, 859 S.W.2d 355 (Tenn. Ct. App. 1993), this Court reversed a trial court's decision to change physical custody to the father until the mother relocated to the state of Tennessee. In Hill, the final decree incorporated the marital dissolution agreement in which the wife agreed not to move from the state of Tennessee with the children during their minority. On appeal this Court stated that "any agreement or arrangement concerning the custody of minor children is subject to modification . . ." citing Rogero v. Pitt, 759 S.W.2d 109 (Tenn. 1988).

For the foregoing reasons, the trial court was at liberty to lift the prohibition on removal found in the final decree. Wife followed the proper procedure outlined in Taylor and Aaby by petitioning the court to allow her to remove the child from Tennessee and asking for a new visitation schedule for Husband. The burden then was upon the Husband to show, by a preponderance of the evidence, that Wife's motives for moving were vindictive, that is, intended to defeat or deter Husband's visitation rights. Aaby at 629.

Wife testified to her reasons for desiring to move to Texas with the minor child. Wife stated that she had remarried and her husband lived and worked in Texas. Wife was able to find employment there with a pay increase of $6,000.00 and additional bonuses. Smith, Wife's current husband, testified that he would not be able to move to Tennessee as his employment was in Texas and he also has two minor children in Texas and has regular visitation with them. Smith testified that if the court did not allow Wife to move with the child to Texas, Wife and Smith would be forced to carry on a long distance marriage.

Wife testified that she was willing to work with Husband, if the court allows her to remove to the State

8

of Texas, to transport the child back and forth to Husband in Tennessee.

> Q: Now, tell Judge Bell what you are willing to do.
> A: Well, I want Alton to have every opportunity to spend as much time with him as he can. And we are - I am prepared to bring him back at my expense every six weeks for nine days and transport the child at my expense.
> Q: Now, are there any other times that you would propose for there to be visitation between the father and the child?
> A: Yes, sir. We would like to have him spend a week with him at Christmas and two separate two-week periods during the summer and then any weekend out of the month that he would like to come to Dallas.
> Q: So you don't object to him visiting at least once a month in Dallas if he wants to come or can come?
> A: I encourage it.

When Wife was questioned about whether her move was done to defeat or deter visitation, Wife stated that it was not and that she encourages visitation between Husband and the child.

Husband testified as to numerous and substantial reasons why he would like the child to remain in Tennessee. While this Court admires and encourages the bond Husband seeks to maintain by keeping the child in close proximity to Husband and the child's extended family, this Court is bound by the holding in Aaby. The custodial parent will be allowed to move with the child unless the non-custodial parent proves a vindictive purpose. There was simply no proof in this case that Wife was seeking to defeat or deter Husband's visitation rights. Quite the contrary, the proof showed that Wife was willing to undertake the rather costly expense of transporting the child to and from Tennessee at six-week intervals for visitation periods with Husband. Wife also expressed that Husband was welcome to travel to Dallas for periods of visitation as well. This Court holds that the trial court was not in error in allowing Wife to remove the minor child from the state.

## IV.   Visitation Schedule

Both parties object to the visitation schedule ordered by the trial court. In Taylor the Supreme Court discussed the visitation issue.

> [R]emoval of the child from the jurisdiction may require rescheduling of the non-custodial parent's visitation; . . . that the courts must be sensitive to the non-custodial parent's efforts to maintain his or her relationship with the children, and that visitation should be arranged in a manner most likely to enhance that relationship . . . These factors, and any related factual circumstances found by the court to be significant in a given situation, must be weighed individually and collectively.
> Taylor at 332.

9

The Supreme Court also addressed the visitation issue in Aaby.

> With regard to procedure, we conclude that if the parties cannot agree on an acceptable visitation schedule, the custodial parent seeking to remove must file a petition with the court to reapprove or revise, as the case may require, the existing visitation schedule . . . As is the case in the initial proceedings, neither party shall bear the burden of proof on the visitation issue; rather, the trial court shall, in its sound discretion, fashion an acceptable revised visitation arrangement. Any prior law inconsistent with these conclusions is expressly overruled. Aaby at 630.

It is apparent that the trial court had discretion to fashion an acceptable visitation schedule. Due to the distance of the move in this case, it would be highly impractical to retain the original visitation schedule. Husband's visitation proposal requested that he have the child at least two weekends per month and the entire time he is out of school during the summer. Wife proposed a visitation schedule consisting of 111 days while Husband's schedule requested 184 days. The trial judge decided to keep the visitation at the same level as it had previously been exercised. The trial judge ultimately approved a visitation schedule patterned after Wife's schedule, but consisting of 170.5 days per year.

Wife contends that the trial court failed to import into its visitation schedule the current law in Tennessee. She claims the trial court incorrectly concluded that Husband was necessarily entitled to "the same kind of visitation" he had in the Marital Dissolution Agreement. Wife contends that her original visitation proposal, which provides approximately 111 days of visitation, requires significantly less travel. She claims that while this has a positive impact on her, it is also beneficial to the child.

It is clear from the language of Taylor and Aaby quoted above that the trial court is free to modify the visitation schedule and is not restricted to the same kind of visitation originally provided for. However, there is nothing in the record which convinces this Court that the trial judge was not aware of this fact when it fashioned the new visitation schedule. The trial court was equally at liberty to increase or decrease the amount of visitation. In setting the new visitation schedule the Chancellor made the following comment. "I think he is entitled to, and I think in the interest of the child, half and half forever is not going to work. Half and half for the foreseeable future I hope will work." This language evidences the trial court's recognition that it was not required to award the same amount of time Husband previously had, but that for now, the split of time would continue to work. For the reasons stated, we hold that the trial court did not commit error in granting Husband

10

170 days of visitation, with Wife providing all transportation costs.

## V.  Husband's Request for Attorney Fees

Paragraph Three of the Marital Dissolution Agreement reads in pertinent part:

> NON-COMPLIANCE. Should either party incur any expense for legal fees as a result of the breach of any portion of this Marital Dissolution Agreement by the other party, the Court shall award reasonable attorney's fees and suit expenses to the non-defaulting party which are reasonably incurred.

Husband argues that Wife breached the "sixty mile provision" and the estrangement provision of the MDA, and that he should therefore be awarded his fees and expenses pursuant to Paragraph Three of the MDA and Tenn. Code Ann. §36-5-103(c). The trial court found that Wife followed the correct procedure in coming to court to get permission to move and as such she did not breach the agreement.

If Wife had removed the child from the jurisdiction and subsequently filed this petition, or by her removal actions caused Husband to file a petition for relief, we would have a clear case of breach of the agreement. However, Wife was aware of this provision in the agreement, and sought the court's approval in order to avoid breaching the agreement. Wife followed the correct procedure to avoid violating the "60 mile provision." For reasons that will be explained hereinbelow, Wife also did not violate the "estrangement" provision of the MDA. For the foregoing reasons, this Court finds that the trial court did not commit error in declining to award attorney fees to Husband.

## VI.  Change of Custody Issue

Husband contends that the trial court erred in failing to award Husband sole and exclusive custody of the child. He claims that Wife violated the estrangement provision of the MDA which states that "Neither party shall do anything which may estrange the child from either parent or hamper the natural development of their [sic] love for either parent." He claims Wife violated the estrangement provision by becoming engaged to a man and not telling him until after she was married that she had decided to move. He claims that this shows that Wife does not want in good faith to exercise joint custody of the minor child and that she would rather "estrange" or alienate the child from Husband. He cites cases in which this Court has refused to permit

11

the alienating parent to have custody of the children and insured that the parent who has suffered alienation because of the other parent's actions is awarded custody so that no further alienation occurs.

In this case, there was absolutely no evidence offered to support the contention that Wife has attempted to alienate the child from Husband. There has never been any problem with Husband exercising his visitation. There have been no allegations that either party has criticized or otherwise talked poorly about the other parent in the presence of the child. Rather there was evidence by both parties that they shared in the upbringing of the child. Both parties testified that the other was a fit parent. Husband appears to base his estrangement claim on the fact that Wife desires to move with the child to Texas.

Relocation, standing alone, does not constitute a basis for a change of custody. Taylor at 332. The Supreme Court subsequently discussed what is necessary for a change of custody in removal situations in Aaby v. Strange.

> This conclusion does not mean, however, that a non-custodial parent's hands are tied where removal could pose a specific, serious threat of harm to the child. In these situations the non-custodial parent may file a petition for change of custody based on a material change of circumstances. The petition would state, in effect, that the proposed move evidences such bad judgment and is so potentially harmful to the child that custody should be changed to the petitioner. Because Tennessee law allows custody to be changed if the behavior of the custodial parent clearly posits a danger to the physical, mental or emotional well-being of the child, Musselman v. Acuff, 826 S.W.2d 920 (Tenn.App.1991), such a petition would not violate Taylor—which only prohibits a change of custody based solely on the fact of the move. However, expert psychological and/or psychiatric testimony that removal could be generally detrimental to the child will usually not suffice to establish an injury that is specific and serious enough to justify a change of custody. A move in any child's life, whether he or she is raised in the context of a one or two parent home, carries with it the potential of disruption; such common phenomena—both the fact of moving and the accompanying distress—cannot constitute a basis for the drastic measure of a change of custody. Aaby at 629-30.

Husband did not offer any evidence that the proposed move evidenced such bad judgment and was so potentially harmful to the child that custody should be changed to Husband. No evidence was introduced that the behavior of Wife clearly posits a danger to the physical, mental or emotional well-being of the child. In fact, the evidence in this case showed that Wife had found a higher paying job in Texas, she and Smith were in the process of purchasing a home, she had made arrangements for a suitable day school program for the child, and she had gotten references for doctors in the Dallas area who could treat child for his medical

12

condition. Wife further agreed to pay the cost to transport the child, accompanying him both to and from Tennessee, for his scheduled visitation with Husband. It appears that Wife is doing everything possible to ensure a smooth transition for the child and facilitate ample visitation with Husband.

Custody will not be changed to the Husband based solely on the fact of Wife's move. Husband did not offer sufficient evidence to support his estrangement claim, nor did he offer evidence that the move would posit a danger to the child's physical, mental or emotional well-being. Furthermore, the language in Aaby suggests a very strong showing of danger would need be shown, as expert testimony that the move itself would be generally detrimental to the child will not usually suffice. Such a showing was not made by Husband. The trial court did not commit error in failing to award Husband sole and exclusive custody of the minor child.

### VII.  Conclusion

The judgment of the trial court is hereby affirmed. Costs of this appeal are taxed to the Husband, for which execution may issue if necessary.

_____
HIGHERS, J.

13

CONCUR:

_____
FARMER, J.

_____
LILLARD, J.