# FILED

**December 10, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

# IN THE COURT OF APPEALS OF TENNESSEE
# AT NASHVILLE

| | |
|---|---|
| JENNIFER D. WHITE (DEERMAN), ) | |
| ) | |
| Plaintiff/Appellee, ) | Cheatham Chancery |
| ) | No. 8104 |
| VS. ) | |
| ) | Appeal No. |
| JEFFREY MICHAEL WHITE, ) | M1999-00005-COA-R3-CV |
| ) | |
| Defendant/Appellant. ) | |

## APPEAL FROM THE CHANCERY COURT FOR CHEATHAM COUNTY
## AT ASHLAND CITY, TENNESSEE

## THE HONORABLE ALLEN W. WALLACE, CHANCELLOR

For the Plaintiff/Appellee:

Jerry W. Hamlin
Ashland City, Tennessee

For the Defendant./Appellant:

Gary M. Eisenberg
Pleasant View, Tennessee

**AFFIRMED AND REMANDED**

WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This appeal arises from an agreed custody and visitation arrangement gone awry. When the parties divorced, the Chancery Court for Cheatham County approved their marital dissolution agreement giving the mother sole custody of their three children. The parties later agreed to a joint custody arrangement with the mother having primary physical custody. When the mother encountered financial difficulties, the parties agreed to an order continuing joint custody but giving the father primary physical custody of the children. The mother eventually sought sole legal custody of the children after the parties' joint custody arrangement deteriorated. Following a bench trial, the trial court awarded the mother sole custody of the children and made provisions for the father's child support and visitation. The father appeals. We affirm the judgment granting sole custody to the mother because the evidence does not preponderate against the trial court's decision.

## I.

Jeffrey Michael White and Jennifer Dannyelle White (now Deerman) married in December 1985. Before their separation in January 1995, Ms. Deerman gave birth to three daughters.[1] Ms. Deerman filed a petition for divorce in the Chancery Court for Cheatham County. On May 5, 1995, the trial court entered an order awarding Ms. Deerman a divorce and adopting the parties' marital dissolution agreement which provided that Ms. Deerman would have sole custody of the children. Ms. Deerman and the three children remained in Cheatham County, and Mr. White moved to Mt. Juliet in Wilson County.

Mr. White and Ms. Deerman later agreed to modify the original custody arrangement. Accordingly, on April 9, 1996, the trial court entered an order awarding them joint custody of the children. Under this arrangement, the children would reside with Ms. Deerman during the school year and with Mr. White during the summer.

Ms. Deerman began to experience financial difficulties in August 1996 when her then husband, Douglas Eugene Rodriguez, left her taking with him whatever money the couple had in their bank accounts.[2] Ms. Deerman was not employed at the time and had no way to pay the mortgage or to properly care for the children. To help pay her bills, she took work as a long-distance truck driver[3] which resulted in prolonged absences from home during which she could not care for the children as she had been doing.

The parties devised a new custody arrangement in order to accommodate Ms. Deerman's need to work and Mr. White's desire to develop a closer relationship with the children. Mr. White agreed to stop driving long distance routes and to run local routes that would enable him to spend more time with the children. Accordingly, the parties agreed to continue the joint custody arrangement but decided that Mr. White, rather than Ms. Deerman, would have primary physical custody of the children "particularly during the school year." Because of their cordial relationship, they also agreed that structured visitation would be unnecessary.

The trial court entered an agreed order on August 21, 1996 giving legal effect to the parties' agreement. Instead of specifically delineating Ms. Deerman's visitation rights, the order provided that "each of the parties shall have reasonable and liberal visitation and access to the children while they are in the care and custody of the other party." Following the entry of the order, the children moved to Wilson County to live with Mr. White.

The parties' relationship began to deteriorate after August 1996, and they became increasingly hostile toward each other. Ms. Deerman married Michael Lee Deerman and found a job with normal working hours. In March 1997, she petitioned for the return of her children. Mr. White responded with a petition seeking sole custody of the children based on his belief that Ms. Deerman was exposing the

children to "immoral and improper conduct" by living with a man to whom she was not married. Ms. Deerman responded to this allegation by stating that she was, in fact, married to Michael Deerman.

The trial court did not hear these petitions until December 1998. During the hearing, Ms. Deerman testified that Mr. White denied her visitation and telephone contact with the children on several occasions. She also conceded, however, that when the children were in her custody, her mother would sometimes refuse to allow Mr. White to see the children. Ms. Deerman also testified that Mr. White refused to share school or medical records with her. Both parties admitted that they made derogatory remarks about each other in front of the children.[4] Ms. Deerman also recounted how Mr. White withdrew their youngest daughter from Girl Scouts after Ms. Deerman became involved in these activities.

Ms. Deerman testified that her circumstances had improved since August 1996. She had remarried, was current with her bills, and owned her own home. Instead of long distance trucking, Ms. Deerman was driving a courtesy van for Capitol Chevrolet every Tuesday and Thursday. She testified that she had more time to spend with the children than Mr. White who continued driving long distance truck routes. Mr. White testified that he was forced to take some long distance routes because Ms. Deerman's child support payments were sporadic.

The trial court entered an order on January 5, 1999 awarding Ms. Deerman custody of the children. The trial court also ordered Mr. White to pay child support, and awarded him visitation on alternate weekends, during Spring Break, for two weeks of every month in the summer, and during alternate Thanksgiving and Christmas holidays. Mr. White appeals.

## II.

Mr. White contends that the trial court erred in modifying the joint custody arrangement because no unforeseen material change in circumstances had occurred since the trial court entered the August 1996 order. He also asserts that even if the trial court correctly terminated the joint custody arrangement, the court should have awarded him sole legal custody. We have determined that the trial court correctly determined that the children's circumstances had changed materially after the entry of the August 1996 order and that the children's interests would be served best by returning physical custody of Ms. Deerman.

## A.

### Standards for Custody Arrangements

Appellate courts are reluctant to second-guess a trial court's custody and visitation decisions because they often hinge on the demeanor and credibility of parents and witnesses during the hearing. *See Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996); *D v. K*, 917 S.W.2d 682, 685 (Tenn. Ct. App. 1995). Accordingly, we review these decisions de novo on the record with a presumption of correctness unless the evidence preponderates otherwise. *See Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984); *Gaskill v. Gaskill*, 936 S.W.2d at 631; *Griffin v. Stone*, 834 S.W.2d 300, 301 (Tenn. Ct. App. 1992).

Courts should devise custody arrangements that promote the child's relationship with both parents and that interfere as little as possible with post-divorce family decision-making. *See Aaby v. Strange*, 924 S.W.2d 623, 629 (Tenn. 1996); *Taylor v. Taylor*, 849 S.W.2d 319, 331-32 (Tenn. 1993); *Varley v. Varley*, 934 S.W.2d 659, 668 (Tenn. Ct. App. 1996). These decisions are not made to reward or punish parents. *See Sutherland v. Sutherland*, 831 S.W.2d 283, 286 (Tenn. Ct. App. 1991); *Barnhill v. Barnhill*, 826 S.W.2d 443, 453 (Tenn. Ct. App. 1991). Thus, the parents' interests are secondary to those of the children. *See Doles v. Doles*, 848 S.W.2d 656, 661 (Tenn. Ct. App. 1992); *Griffin v. Stone*, 834 S.W.2d at 302.

# B.

## Change of Custody

Children have an ongoing need for continuity and stability in their parental relationships. *See Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997); *Hill v. Robbins*, 859 S.W.2d 355, 358-59 (Tenn. Ct. App. 1993).[5] Accordingly, parents seeking alteration of an existing custody arrangement must overcome a strong presumption in favor of the original custody award. *See Taylor v. Taylor*, 849 S.W.2d at 332. To overcome this presumption, the parent must demonstrate first that the child's circumstances have changed materially and second, that the child's interests will be served best by modifying the existing custody arrangement. *See Adelsperger v. Adelsperger*, 970 S.W.2d at 485. The courts should not engage in a best interests analysis without first satisfying themselves that there has been a material change in the child's circumstances.

There are no hard and fast rules for determining when a change of circumstances will be deemed material. *See Taylor v. Taylor*, 849 S.W.2d at 327; *Dantzler v. Dantzler*, 665 S.W.2d 385, 387 (Tenn. Ct. App. 1983). As a general matter, a material change of circumstances must involve the child's circumstances, not the circumstances of either or both of the parents. It must also involve facts or circumstances (1) that arose after the entry of the custody order sought to be modified, *see Turner v. Turner*, 776 S.W.2d 88, 90 (Tenn. Ct. App. 1988), (2) that were not known or reasonably anticipated when the underlying decree was entered, and (3) that affect the child's well-being in some material way. *See Geiger v. Boyle*, No. 01A01-9809-CH-00467, 1999 WL 499733, at *3 (Tenn. Ct. App. July 16, 1999) (No Tenn. R. App. P. 11 application filed); *Dalton v. Dalton*, 858 S.W.2d 324, 326 (Tenn. Ct. App. 1993). Using these standards, we will now examine the four factual bases for the trial court's conclusion that there had been a material change in circumstances in this case.

## C.

## The Material Change in Circumstances

The most significant change in circumstances evident in this case is the weakening and eventual collapse of the parties' joint custody arrangement. The parties had been able to maintain a cooperative relationship with regard to their daughters up to and through the entry of the August 1996 order. However, following that order, the parties' relationship deteriorated markedly. The failure of a once satisfactory joint custody arrangement can constitute a material change of circumstances sufficient to reopen the issue of custody. *See Rubin v. Kirshner*, 948 S.W.2d 742, 745-46 (Tenn. Ct. App. 1997); *Dalton v. Dalton*, 858 S.W.2d at 326; *Cheek v. Cheek*, No. 03A01-9503-CV-00092, 1995 WL 507793, at \*2 (Tenn. Ct. App. Aug. 29, 1995) *perm. app. denied* (Tenn. Jan. 8, 1996).

As with any material change in circumstances, the unworkability of a joint custody arrangement must directly implicate the child's welfare. It is not enough that the parents begin to like each other less because of the passage of time or because they enter into new personal relationships. The party seeking to replace the joint custody arrangement with another form of custody must show that the breakdown in the parents' relations has or will adversely affect the child in a material way. For example, one parent may be interfering with the child's relationship with the other parent or may be making significant decisions involving the child without consulting the other parent.

Since August 1996, Mr. White and Ms. Deerman seem to have lost their ability to cooperate with each other. Without cooperation, the once-agreeable joint custody arrangement cannot work.[6] The testimony of both parties verifies their antagonism. Mr. White interfered with Ms. Deerman's visitation and telephone contact with the children, and Ms. Deerman's mother interfered with Mr. White's visitation. The parents engaged in name calling in front of the children. Mr. White let his anger

against Ms. Deerman affect his participation in the Girl Scouts and actually withdrew the parties' youngest daughter from Girl Scout activities because of Ms. Deerman's involvement. According to Ms. Deerman, Mr. White also refused her access to the children's school or medical records.

It is reasonable to infer that this kind of behavior affects the children's welfare. It is also unlikely that the trial court foresaw these events when it entered the August 21, 1996 order. Accordingly, we find that the evidence does not preponderate against the conclusion that an unforseen material change in circumstances has occurred, and affirm the trial court's decision to reconsider the joint custody arrangement.

## D.
### Comparative Fitness of the Parties

Mr. White argues in the alternative that the trial court erred in its application of the comparative fitness test by failing to consider all of the factors contained in Tenn. Code Ann. § 36-6-106 (Supp. 1999). He asserts that he would have received sole custody of the parties' three children had the trial court given appropriate weight to these statutory factors. We conclude that the evidence does not preponderate against the trial court's decision to award Ms. Deerman custody.

Once a court finds that there has been a material change in circumstances, it must decide whether changing the existing custody arrangement is in the child's best interests. This determination is factually driven and requires the court to carefully weigh many considerations. *See Gaskill v. Gaskill*, 936 S.W.2d at 630. These considerations are delineated in Tenn. Code Ann. § 36-6-106 and *Bah v. Bah*, 668 S.W.2d 663, 666 (Tenn. Ct. App. 1983). One newly recognized statutory consideration is "the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child." Tenn. Code Ann. §

36-6-106(10).

Parents competing for custody are human beings with their own unique virtues and vices. *See Gaskill v. Gaskill*, 936 S.W.2d at 630. Accordingly, the courts do not expect a parent to prove that he or she is perfect, *see Bah v. Bah*, 668 S.W.2d at 666; *Edwards v. Edwards*, 501 S.W.2d 283, 290-91 (Tenn. Ct. App. 1973), or that the other parent is completely unfit. *See Griffin v. Stone*, 834 S.W.2d at 305; *Harris v. Harris*, 832 S.W.2d 352, 353 (Tenn. Ct. App. 1992). Instead, courts analyze the "comparative fitness" of the parents to determine which of the available custodians is comparatively more fit than the other at the time of the hearing. *See In re Parsons*, 914 S.W.2d at 893; *Bah v. Bah*, 668 S.W.2d at 666.

Continuity of placement and stability are important considerations in these sorts of cases. However, continuity and stability do not trump all other considerations. Depending on the circumstances, the parent who has been acting as the primary caregiver is not necessarily more fit than the other parent to have permanent custody. *See Gaskill v. Gaskill*, 936 S.W.2d at 630-31.

Mr. White argues that the trial court erred by failing to consider all of the factors outlined in Tenn. Code Ann. § 36-6-106, as evidenced by its emphasis on one factor, a parent's facilitation and encouragement of the child's relationship with the other parent. The trial court need not recite the list of statutory factors each time it resolves a custody dispute. It is sufficient to discuss those factors bearing most heavily on the decision. To show error, Mr. White must persuade us that the evidence in the record preponderates against the trial court's finding that Ms. Deerman is the comparatively more fit parent. He has not met this burden. Ms. Deerman has remarried, and is financially stable. She is an available parent working locally only two days a week. Ms. Deerman volunteers to help at the children's schools and, unlike Mr. White, continues to participate in the Girl Scouts.

The record contains little evidence that either parent is comparatively more fit

than the other. Thus, the trial court found it dispositive that Mr. White had shown himself unwilling to encourage the children's relationship with their mother. The evidence supports this finding. Mr. White interfered with Ms. Deerman's visitation, refused to share school and medical records, and withdrew himself and the parties' youngest daughter from Girl Scout activities when Ms. Deerman became involved.

The children's need for continuity and stability reinforces our decision to affirm the trial court. The children have been uprooted twice since the divorce in May 1995. First, in August 1996, they moved from their mother's home in Cheatham County to live with their father in Wilson County. Presumably, this meant changing schools and making new friends. Then, in January 1999, the children experienced the same process in reverse. The trial court ordered the children returned to Ms. Deerman in Cheatham County. Because the children have now lived in Cheatham County with their mother for almost a year, permitting the current custody arrangement to continue also serves the children's best interests.

## III.

We affirm the judgment and remand the case to the trial court for whatever further proceedings may be required. We also tax the costs of this appeal to Jeffrey Michael White and his surety for which execution, if necessary, may issue.


_____
                                                 WILLIAM C. KOCH, JR., JUDGE


CONCUR:


_____
BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

_____

WILLIAM B. CAIN, JUDGE