IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 9, 2002 Session

## IN RE: SHIANN MARIE HORNER, A MINOR

**Appeal from the Juvenile Court for Greene County**
**No. JV15502      Thomas J. Wright, Judge**

**FILED MARCH 21, 2003**

**No. E2002-00588-COA-R3-JV**

This appeal focuses on the trial court's guardianship decree regarding Shiann Marie Horner (DOB: November 18, 1996) ("the child"). When the child's mother died, she moved in with her father, Charles E. Horner ("the father"), in Greene County. Following the father's incarceration as a result of his second arrest for driving under the influence of an intoxicant ("DUI"), the child started living full-time with her weekend caregivers, Ralph L. Hensley and Diana Hensley ("the Greeneville couple"), a married couple who are not related to the child by blood or marriage. The child's maternal aunt, Lori Lynn Kopsi, a resident of Menominee, Michigan ("the Michigan aunt"), filed a petition seeking custody of the child. The Greeneville couple responded with their own petition for custody. Following a hearing on the competing petitions, the trial court determined that it was in the child's best interest that the Greeneville couple should serve as the child's guardian. The Michigan aunt appeals, challenging the trial court's judgment. We affirm.

**Tenn. R. App. R. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

Russell D. Mays, Greeneville, Tennessee, for the appellant, Lori Lynn Kopsi.

Douglas L. Payne, Greeneville, Tennessee, guardian ad litem for Shiann Marie Horner, a minor.

Kenneth N. Bailey, Jr., Greeneville, Tennessee, for the appellees, Ralph L. Hensley and Diana Hensley.

**OPINION**

I.

The mother of the child, Stacy Ray ("the mother"), died in an automobile accident on December 25, 2000. Prior to the mother's death, the child lived with her in Greene County. The mother and the father were never married and had been living apart since early in the child's life. Shortly after the child's birth, the father moved to Florida where he continued to reside until after the mother's death. The father's relationship with the child was limited to weekly telephone conversations. Following the mother's death, the father returned to Greene County and rented a residence where the child resided with him.

The father and the child appear to have developed a strong bond. However, the father's substance abuse problems interfered with his ability to raise the child. The father would drink and smoke cigarettes in the presence of the child, who suffers from chronic asthma. In addition, the father has twice been arrested for DUI; the child was in the car on both occasions. Following the second DUI arrest, father was incarcerated, and the Greeneville couple, who had been taking care of the child on weekends, assumed full-time responsibility for the child's custody and welfare.

II.

On November 21, 2001, after the father's second DUI arrest, the Michigan aunt filed her second petition seeking custody of the child. In response, the Greeneville couple filed their own petition for custody. By this time, as previously mentioned, the child was already residing with the Greeneville couple.

The trial court held that it was in the child's best interest to remain in the care of the Greeneville couple. The court evaluated the evidence with reference to the custody factors set forth in Tenn. Code Ann. § 36-6-106 (2001). It also considered the Father's preference for the Greeneville couple, relying on the language of Tenn. Code Ann. § 34-2-103 (2001) ("the guardianship statute").[1] Accordingly, it designated the Greeneville couple as the child's guardians.

---

[1]Tenn. Code Ann. § 34-2-103 (2001), reads, in pertinent part, as follows:

> Subject to the court's determination of what is in the best interests of the minor, the court shall consider the following persons in the order listed for appointment of the guardian:
>
> * * *
>
> (2) The person or persons designated by the parent or parents in a will or other written document;
>
> * * *
>
> (4) Closest relative or relatives of the minor; and
>
> (5) Other person or persons.

III.

A.

The Michigan aunt contends that the trial court made both factual and legal errors. She states that the court below erred in finding that placement with the Greeneville couple was in the child's best interest. As support for her position, the Michigan aunt points to numerous instances, as reflected in the record, where her parenting skills were tested and found to be strong. For example, the Michigan aunt points to the fact that she had been married for 21 years and had served as a foster parent to more than 115 children while also raising her biological and adoptive children. In contrast, the Greeneville couple had been married for only five years. In addition, the Michigan aunt states that, at the request of one of her natural children, she is no longer taking foster children, thus freeing her to take care of the child. The Michigan aunt argues that the Greeneville couple cannot expose the child to an experienced family environment. She points out that she does not work outside the home while her adversaries both do. The Michigan aunt argues that the Greeneville couple would not have as much time as she would to devote to the child and her welfare. For these reasons, the Michigan aunt asserts that the Greeneville couple are significantly less suitable guardians for the child. Given this evidence, the Michigan aunt contends that placement with her is clearly in the best interest of the child.

The Michigan aunt asserts that the trial court made a legal error in giving weight to the father's preference that the child be placed with the Greeneville couple. The Michigan aunt points to the language of the guardianship statute and asserts that it only directs a court to take into account a parent's preference for a guardian in a case involving wills or other written legal documents. As a blood kin to the child, the Michigan aunt contends that the guardianship statute militates in her favor with respect to the guardianship issue.

B.

The Greeneville couple contends that the trial court reached the correct result regarding the child's best interest and that it properly applied the guardianship statute. They cite evidence in the record that they assert weighs in favor of a finding that it is in the best interest of the child to leave her custody with them. They stress the continuity of the child's placement and the need to keep the child in the father's locale.

Regarding the application of the guardianship statute, the Greeneville couple argues that even a parent who has allowed his child to become dependent and neglected can, through testimony, designate a preference as to the guardian for his child.

IV.

Our review of this non-jury case is *de novo* upon the record of the proceedings below; however, that record comes to us with a presumption that the trial judge's factual findings are correct.

Tenn. R. App. P. 13(d). We must honor this presumption unless we find that the evidence preponderates against those findings. *Id.*; *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984). Our *de novo* review is subject to the well-established principle that the trial judge is in the best position to assess the credibility of the witnesses; accordingly, such credibility determinations are entitled to great weight on appeal. *Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995); *Bowman v. Bowman*, 836 S.W.2d 563, 566 (Tenn. Ct. App. 1991). A trial court has broad discretion regarding a custody determination. *Brumit v. Brumit*, 948 S.W.2d 739, 740 (Tenn. Ct. App. 1997). We will not disturb such a determination unless the record reflects an abuse of that discretion. *Id*.

V.

There are "[n]o hard and fast rules . . . for determining which custody and visitation arrangement will best serve a child's needs." *Gaskill v. Gaskill*, 936 S.W.2d 626, 630 (Tenn. Ct. App. 1996). A custody determination is "factually driven" and "requires the courts to carefully weigh numerous considerations." *Id*. The overriding consideration is the best interest of the child. *See id*. The primary controlling statute, Tenn. Code Ann. § 36-6-106, in pertinent parts, provides as follows:

> (a) *In . . . any . . . proceeding requiring the court to make a custody determination regarding a minor child*, such determination shall be made upon the basis of the best interest of the child. The court shall consider all relevant factors including the following where applicable:
>
> (1) The love, affection and emotional ties existing between the parents and child;
>
> (2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;
>
> (3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;...
>
> (4) The stability of the family unit of the parents;
>
> * * *
>
> (6) The home, school and community record of the child;
>
> * * *
>
> (9) The character and behavior of any other person who resides in or

4

frequents the home of a parent and such person's interactions with the child;  and

(10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

(Emphasis added).

In the instant appeal, the trial court considered the legal effect of the guardianship statute, Tenn. Code Ann. § 34-2-103.  That statute adds to the custody evaluation by providing a hierarchy of preference with regard to appointing a minor child's guardian.  It provides:

> Subject to the court's determination of what is in the best interests of the minor, the court shall consider the following persons in the order listed for appointment of the guardian:
>
> (1) The parent or parents of the minor;
>
> (2) *The person or persons designated by the parent or parents in a will or other written document*;
>
> (3) Adult siblings of the minor;
>
> (4) *Closest relative or relatives of the minor*;  and
>
> (5) Other person or persons.

*Id.* (emphasis added).

VI.

A.

The trial court made the following conclusions in its opinion:

> With regard to placing the child in the [Greeneville couple's] home, it is a [negative] that the [Greeneville couple is]  not blood relation to the child.  There is also a preference in Tennessee law for placement with family – blood relatives.  The negative point is that the [Greeneville couple's] home is so far from the [Michigan aunt's]

5

home and from the child's half-brother that she's grown up with but also lives in Michigan, although apparently not very close to the [Michigan aunt]. It's a negative in comparing the [Greeneville couple's] home with the [Michigan aunt's] home in that [the female member of the Greeneville couple] works full time and therefore would have less time available for the child. It's a negative that [the female member of the Greeneville couple] smokes . . . . In the [Michigan aunt's] home it's certainly a negative that the child will be separated a great distance from the child's father and the many family members that we've heard about that are in Greene County. It's a negative that the relationships here which are standing would be disrupted in large measure by placing the child in the [Michigan aunt's] home. It's a negative to me that there are several other kids in the home, including foster children that are there when school is let out. And it's also a negative that [the father] stated his preference where he would like his daughter's guardianship go to [*sic*] the [the Greeneville couple]. The great advantage of the [Michigan aunt's] home is the experience that they had with the court system with foster children there . . . . Tennessee Code Annotated, Section 34-2-103, provides the court with a priority list of persons to be considered for a guardianship of the minor child demonstrating the State of Tennessee is paramount [*sic*] with the concern and right of the natural parents, both parents, and their desire to provide that guardianship. Second in priority order from that is the person or persons designated by the parent or parents in a will or other written documents. The court finds that [the father's] testimony tonight satisfied the spirit of that provision. So that'll obviously not be a written letter, but he designated [the Greeneville couple]. . . .

I'm so angry with [the father] for his failure. After the anguish I went through at the last hearing, it's hard for me to consider his desires. But in the abstract and as a judge I think that Tennessee law requires his considering. I think the Guardian Ad Litem is correct in pointing that out to the court. And really the only question – I think my analysis of this situation is [the father's] rights have not been terminated. [The father] is still very much alive. He's still the legal and biological parent of the child. He has designated [the Greeneville couple]. And my analysis is unless I can find . . . that it not be in the child's best interest to live with [the Greeneville couple] then I've got to give respect to the constitutional rights of the father and his designation. There are reports in favor of [the Michigan aunt] and orders in favor of [the Greeneville couple] that I can't find that are not in the child's best interest that goes back to the father's wishes.

6

In light of the fact that I'm almost going to terminate the dad's rights to the child if I place her in Michigan[,] . . . I've got to deal with that fact and with [the father's] legal rights that I've lost a lot of respect for but can't disregard from the legal standpoint I'm taking. Having said that, the court decides that we should give respect to [the father's] designation and allow the temporary guardianship of the child to remain with [the Greeneville couple] who are no relation to the child. . . .

The Michigan aunt argues that the trial court improperly applied the guardianship statute to the present case. In *Presley v. Shadrick*, No. E2001-000150-COA-R3-JV, 2001 WL 1657210 (Tenn. Ct. App. E.S., filed December 27, 2001) , we stated that the priority of Tenn. Code Ann. § 34-2-103 does not override the best interest analysis of Tenn. Code Ann. § 36-6-106. *Id.* at *8. This is clear from the lead-in language of Tenn. Code Ann. § 34-2-103 providing that its provisions are "[s]ubject to the court's determination of what is in the best interests of the minor." This means that the "best interests" of a child whose custody is being decided is the alpha and omega of the determination. It is only when competing individuals are essentially equal in the "best interests" determination that a court is justified in evaluating the statutory priority of Tenn. Code Ann. § 34-2-103.

B.

While the Michigan aunt urges us to hold that the priority set forth in Tenn. Code Ann. § 34-2-103(2) only applies if the parent's preference is recited in "a will or other written document," we do not find it necessary to reach this issue. The trial court's discussion of the child's best interest clearly indicates that it properly considered the best interest standards set forth in Tenn. Code Ann. § 36-6-106. The child's best interest was the linchpin of the trial court's custody award. We do not believe that the trial court's reference to the guardianship statute was determinative. There is nothing in the record to indicate that the trial court decided that the child's best interest would be served by placing her with the Michigan aunt, but declined to do so because of the father's testimonial preference for the Greeneville couple. Accordingly, we find no abuse of discretion in the trial court's decision to leave the child with the Greeneville couple.

The above quoted language from the lower court's opinion clearly demonstrates that the court properly considered the Tenn. Code Ann. § 36-6-106 factors. Among the negatives listed for the Greeneville couple are that they are not blood relatives, one of them is a smoker, and the female custodian's work schedule. Among the negatives cited for the Michigan aunt are the presence of several other children in that home and the fact that the child will have to move and leave behind the only bonds she has formed. The trial court's opinion correctly indicates that this is a close case.

The closeness of this case brings us to the issue of continuity. The trial court's opinion makes several references to continuity in the child's life, particularly as it relates to the child's relationships with others. Tennessee courts have held that continuity in the child's life may be the tiebreaker in a best interest determination. *See **Taylor v. Taylor***, 849 S.W.2d 319, 328, 332 (Tenn.

1993); *Steen v. Steen*, 61 S.W.3d 324, 328 (Tenn. Ct. App. 2001); *Gaskill*, 936 S.W.2d at 631; *Hill v. Robbins*, 859 S.W.2d 355, 358 (Tenn. Ct. App. 1993). We believe the trial court properly considered continuity to be an important factor in its decision. By allowing the child to remain in Tennessee, the trial court left open the possibility that the father and the child might someday be reunited. The court's opinion also makes reference to other relationships the child has developed in Tennessee. Clearly, the court believed that removing the child from Greene County would be adverse to the child's best interest.

Concerning the father's preference for the Greeneville couple, we believe the father's preference that the child remain with the Greeneville couple in Tennessee has a bearing on the child's best interest. The trial court's opinion indicates that the child has not successfully bonded with many people since her mother's death. The guardian ad litem's report indicates that the child has formed a bond with the father. The father's preference indicates that he wishes to continue his relationship with the child. Removal from Tennessee would make it more difficult for the father to continue his relationship with the child, something that does not appear to be in the child's best interest.

## C.

Assuming, without deciding, that the trial court placed undue emphasis on the guardianship statute, we hold that the evidence preponderates in favor of the trial court's ultimate finding that the best interest of the child militates in favor of a finding that her custody should be placed with the Greeneville couple.

## VII.

The judgment of the trial court is affirmed. This case is remanded to the trial court for enforcement of the trial court's judgment and for collection of costs assessed there, all pursuant to applicable law. Costs on appeal are taxed to the appellant, Lori Lynn Kopsi.

_____
CHARLES D. SUSANO, JR., JUDGE