IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 15, 1999 Session

## SUZETTE MARIE ELDER v. SIDNEY LEE ELDER

**Appeal from the Circuit Court for Franklin County**
**No. 98-50-CV     J. Curtis Smith, Judge**

_____

**No. M1998-00935-COA-R3-CV - Filed September 14, 2001**

_____

This appeal involves a post-divorce custody dispute precipitated by the custodial parent's decision to accept a job in Texas. The custodial parent requested the Circuit Court for Franklin County to permit the parties' children to accompany him to Texas and to adjust the visitation arrangements accordingly. The non-custodial parent responded by requesting the trial court to change custody. Following a bench trial, the trial court declined to change the existing custody arrangement and permitted the custodial parent to move to Texas. On this appeal, the non-custodial parent takes issue with both the denial of her petition to change custody and the approval of the custodial parent's move to Texas. We have determined that the record supports both of these decisions and, therefore, affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Tamra Lee Smith, Shelbyville, Tennessee, for the appellant, Suzette Marie Elder.

Robert L. Huskey, Manchester, Tennessee, for the appellee, Sidney Lee Elder.

**OPINION**

**I.**

Suzette Elder and Sidney Elder were divorced in April 1997. Mr. Elder received custody of their two pre-teen children. Ms. Elder received defined visitation rights and was ordered to pay child support. Ms. Elder did not remarry and continued to operate a daycare center in Winchester. Mr. Elder later remarried, and he, his new wife, and their combined four children also remained in the Winchester area.

While the parties, for the most part, went on with their lives following the divorce, they experienced some difficulty adjusting to the role of divorced parents. Their children, as is most often the case, have borne the brunt of these problems. Ms. Elder had problems reaching the children by telephone and visiting them at school. The parties squabbled frequently about visitation. They were also unable to agree on the proper approach to raising their children. Ms. Elder particularly disagreed with the manner in which Mr. Elder's new wife physically disciplined the parties' daughter. Apparently their daughter did not get along well with her stepbrother and believed that her stepmother was not treating her fairly.

Mr. Elder began looking for a better job because he had a larger family to support. In January 1998, after looking close to home without much success, he accepted a higher paying job in Houston, Texas as a project scheduler in the oil and gas industry. Thereafter, Ms. Elder filed a petition in the Circuit Court for Franklin County asserting that she was not receiving the visitation she was entitled to under the divorce decree. Mr. Elder then filed a petition requesting the trial court to authorize his relocation to Texas and to adjust Ms. Elder's visitation rights accordingly. Ms. Elder responded with a petition requesting the trial court to change custody or to deny Mr. Elder permission to move the children to Texas because moving to Texas would not be in their best interests.

Following a bench trial in February 1998, the trial court determined that Ms. Elder had not proved that a change of custody was warranted or that moving to Texas was not in the children's best interests. Accordingly, the trial court permitted Mr. Elder to move the children to Texas and modified the visitation arrangements to accommodate the move. On this appeal, Ms. Elder insists that the trial court erred by not granting her petition to change custody and by permitting Mr. Elder to move the children to Texas.

## II.
### MS. ELDER'S PETITION TO CHANGE OF CUSTODY

Ms. Elder's first argument is that the trial court erred by failing to recognize a material change in the children's circumstances following Mr. Elder's remarriage. Specifically, she asserts that her daughter's difficulties with her stepmother and stepbrother provide ample grounds for changing custody. We disagree.

### A.

Because of the importance placed on stability and continuity of placement,[1] there is a strong presumption in favor of an existing custody decision. *Taylor v. Taylor*, 849 S.W.2d at 332;

---

[1] *Taylor v. Taylor*, 849 S.W.2d 319, 328 (Tenn. 1993); *Gorski v. Ragains*, No. 01A01-9710-GS-00597, 1999 WL 511451, at *4-5 (Tenn. Ct. App. July 21, 1999) (No Tenn. R. App. P. 11 application filed); *see also* National Interdisciplinary Colloquium on Child Custody, *Legal and Mental Health Perspectives on Child Custody Law: A Deskbook for Judges* § 5:1, at 51 (1998).

*Hoalcraft v. Smithson*, 19 S.W.3d 822, 828 (Tenn. Ct. App. 1999). In fact, a custody decision, once made and implemented, is res judicata upon the facts in existence or reasonably foreseeable when the decision was made. *Young v. Smith*, 193 Tenn. 480, 485, 246 S.W.2d 93, 95 (1952); *Solima v. Solima*, 7 S.W.3d 30, 32 (Tenn. Ct. App. 1998); *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997).

Life in contemporary society is, however, rarely static. Accordingly, our statutory and decisional law empowers the courts to alter custody arrangements when intervening circumstances require modifications. Tenn. Code Ann. § 36-6-101(a)(1) (Supp.2000) (stating that custody decrees are "subject to such changes or modification as the exigencies of the case may require"). Thus, the courts may modify an existing custody arrangement when required by unanticipated facts or subsequently emerging conditions. *Smith v. Haase*, 521 S.W.2d 49, 50 (Tenn. 1975); *Adelsperger v. Adelsperger*, 970 S.W.2d at 485. In the interests of stability in the child's life, a court should not alter an existing custody arrangement until (1) it is satisfied that the child's circumstances have changed in a material way since the entry of the presently operative custody decree, (2) it has carefully compared the current fitness of the parents to be the child's custodian, and (3) it has concluded that changing the existing custody arrangement is in the child's best interests. *Gorski v. Ragains*, 1999 WL 511451, at *3.

There are no bright line rules for determining when a change of circumstances will be deemed material enough to warrant changing an existing custody arrangement. *Taylor v. Taylor*, 849 S.W.2d at 327; *Solima v. Solima*, 7 S.W.3d at 32. These decisions turn on the unique facts of each case. As a general matter, however, the following principles illuminate the inquiry. First, the change of circumstances must involve the child's circumstances rather than those of either or both parents. *Hoalcraft v. Smithson*, 19 S.W.3d at 829. Second, the changed circumstances must have arisen after the entry of the custody order sought to be modified. *Turner v. Turner*, 776 S.W.2d 88, 90 (Tenn. Ct. App. 1988). Third, the changed circumstances must not have been reasonably anticipated when the underlying decree was entered. *Adelsperger v. Adelsperger*, 970 S.W.2d at 485. Fourth, the circumstances must affect the child's well-being in some material way. *Hoalcraft v. Smithson*, 19 S.W.3d at 829; *Dalton v. Dalton*, 858 S.W.2d 324, 326 (Tenn. Ct. App. 1993).

A finding of a material change in the child's circumstances is the threshold determination that a trial court must make. *Placencia v. Placencia*, 48 S.W.3d 732, 736 (Tenn. Ct. App. 2000). If the party seeking the change of custody cannot demonstrate that the child's circumstances have changed in some material way, the trial court should not proceed to re-examine the comparative fitness of the parents, *Caudill v. Foley*, 21 S.W.3d 203, 213 (Tenn. Ct. App. 1999), or engage in a "best interests of the child" analysis. Rather, in the absence of proof of a material change in the child's circumstances, the trial court should simply decline to change custody. *Hoalcraft v. Smithson*, 19 S.W.3d at 828.

**B.**

Ms. Elder's request for a change of custody rests solely on her children's relationship with their new stepmother and stepbrother. She takes issue with Mr. Elder's new wife's approach to discipline and points out that the children, especially the parties' daughter, does not like her slightly older stepbrother. At the time of the hearing, the children were not getting along and were apparently "tattling" frequently on each other out of vindictiveness.

This court has held frequently that remarriage alone is not the sort of material change in circumstances that will trigger a re-examination of an existing custody arrangement. *E.g., Fulbright v. Fulbright*, No. E2000-02040-COA-R3-CV, 2001 WL 839692, at *9 (Tenn. Ct. App. July 25, 2001); *Smithson v. Eatherly*, No. 01A01-9806-CV-00314, 1999 WL 548586, at *5 (Tenn. Ct. App. July 29, 1999) (No Tenn. R. App. P. 11 application filed); *Arnold v. Arnold*, 774 S.W.2d 613, 618 (Tenn. Ct. App. 1989). However, the changes in a child's home environment following a parent's remarriage may amount to a material change in the child's circumstances if they are adversely affecting the child in some material way. *Richardson v. Richardson*, No. W2000-02374-COA-R3-CV, 2001 WL 687074, at *3 (Tenn. Ct. App. June 14, 2001) (No Tenn. R. App. P. 11 application filed); *McCain v. Grim*, No. 01A01-9711-CH-00634, 1999 WL 820216, at * 3 (Tenn. Ct. App. Oct. 15, 1999) (No Tenn. R. App. P. 11 application filed); *Davenport v. Davenport*, No. 03A01-9804-CV-00154, 1998 WL 880915, at *2 (Tenn. Ct. App. Dec. 17, 1998) (No Tenn. R. App. P. 11 application filed); *Tortorich v. Erickson*, 675 S.W.2d 190, 192 (Tenn. Ct. App. 1984).

Mr. Elder's second marriage was only seven months old when the trial court conducted the hearing in this case. There is abundant evidence that the members of the new family were still adjusting to each other. The children were vying for attention and for favored status, and the parents, particularly Mr. Elder's new wife, were being protective of their own children. Mr. Elder's daughter and his new wife had clearly not adjusted to each other. Mr. Elder's new wife had slapped her stepdaughter on more than one occasion and on another occasion had shaken her so hard that it left bruises. These incidents did not repeat themselves after Mr. Elder and his new wife agreed on more appropriate ways to discipline the children.

Ms. Elder also complains about another incident when the children were caught playing with kitchen knives in the house. The evidence indicates that this was a spontaneous occurrence that has not been repeated. Mr. Elder and his new wife did not condone the behavior and, in fact, punished all the children. This single incident of misbehavior does not provide a strong enough reason to revisit a settled custody arrangement. *Cf. Adelsperger v. Adelsperger*, 970 S.W.2d at 487 (holding that a single incident of fallible behavior does not supply a strong enough reason to re-adjudicate custody).

Trial courts necessarily have broad discretion to fashion custody and visitation arrangements that best suit the unique circumstances of each case. *Parker v. Parker*, 986 S.W.2d 557, 563 (Tenn. 1999); *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988); *Helson v. Cyrus*, 989 S.W.2d 704, 707 (Tenn. Ct. App. 1998). It is not our role to "tweak [these decisions] . . . in the hopes of achieving a more reasonable result than the trial court." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001). A trial court's decision regarding custody or visitation should be set aside only when it "falls outside

-4-

the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Eldridge v. Eldridge*, 42 S.W.3d at 88.

It is not difficult to understand Ms. Elder's concern about how her children have been fairing with Mr. Elder and his new wife. She had good cause to object to the manner in which Mr. Elder's new wife had tried to discipline her daughter. But as far as this record shows, similar incidents have not occurred since Mr. Elder requested his new wife to follow a different course when disciplining the children. While we do not condone the stepmother's conduct, we decline to find that these incidents, in and of themselves, amount to a material change in the children's circumstances that require a reconsideration of the initial custody decision. Based on this record, we have no reason to conclude that the trial court based its decision not to change custody on the wrong legal principles or on an incorrect application of these principles to the facts of this case.

### III.
### MR. ELDER'S MOVE TO TEXAS

Ms. Elder also takes issue with the trial court's decision to permit Mr. Elder to relocate the children to Texas. She asserts that the evidence does not support the trial court's conclusions that Mr. Elder's decision to move to Texas was not vindictive and that moving the children to Texas would not expose them to a threat of specific and serious harm. We have determined that the evidence fully supports the trial court's decision to permit Mr. Elder to move the children to Texas.

When this case was tried in February 1998, the principles governing the relocation of children were derived exclusively from *Aaby v. Strange*, 924 S.W.2d 623 (Tenn. 1996). However, before the trial court entered its final order, the Tennessee General Assembly enacted a statute providing a procedure and the governing principles for relocation cases.[2] Tenn. Code Ann. § 36-6-108 took effect on May 7, 1998[3] and, therefore, governed the trial court's order that was filed on May 12, 1998.[4] Accordingly, we will review Ms. Elder's challenge to the trial court's relocation decision using Tenn. Code Ann. § 36-6-108.[5]

---

[2] Act of April 22, 1998, ch. 910, 1998 Tenn. Pub. Acts 637, codified at Tenn. Code Ann. § 36-6-108 (Supp. 2000).

[3] The Act provided that it take effect upon becoming law, and the Governor signed the bill on May 7, 1998. Act of April 22, 1998, ch. 910, § 2, 1998 Tenn. Pub. Acts 637, 640.

[4] Neither the trial court nor the lawyers should be faulted for not invoking Tenn. Code Ann. § 36-6-108 during the trial court proceedings because it became effective only five days before the trial court entered the final order. However, the parties addressed Tenn. Code Ann. § 36-6-108 in their appellate briefs. The statute became effective while the case was still pending in the trial court and, as remedial legislation, is applicable to proceedings filed before its effective date. *Caudill v. Foley*, 21 S.W.3d at 208; *Adams v. Adams*, No. 01A01-9711-CV-00626, 1998 WL 721091, at *3 (Tenn. Ct. App. Oct. 16, 1998) (No Tenn. R. App. P. 11 application filed).

[5] We note parenthetically that our decision on this issue would have been the same if we had used the principles
(continued...)

Tenn. Code Ann. § 36-6-108(d) reflects a legislatively mandated presumption in favor of relocating custodial parents who spend "the greater amount of time with the child." It provides that

> The parent spending the greater amount of time with the child shall be permitted to relocate with the child unless the court finds:
> (1) The relocation does not have a reasonable purpose;
> (2) The relocation would pose a threat of specific and serious harm to the child which outweighs the threat of harm to the child of a change of custody; or
> (3) The parent's motive for relocating with the child is vindictive in that it is intended to defeat or deter visitation rights of the non-custodial parent or the parent spending less time with the child.

Should the trial court find that any one of the three circumstances identified in Tenn. Code Ann. § 36-6-108(d) exists, it must then determine whether the proposed relocation is in the child's best interests using the factors included in Tenn. Code Ann. § 36-6-108(e).

Even though the trial court did not apply Tenn. Code Ann. § 36-6-108 when it rendered its decision, its findings are consistent with a conclusion that Ms. Elder failed to prove that any of the three circumstances identified in Tenn. Code Ann. § 36-6-108(d) exist. The trial court concluded, in effect, that Ms. Elder had failed to prove either that the move to Texas posed a threat of specific and serious harm to the children [Tenn. Code Ann. § 36-6-108(d)(2)] or that Mr. Elder's motive for moving to Texas with the children was vindictive in that it was intended to defeat or deter her visitation rights [Tenn. Code Ann. § 36-6-108(d)(3)]. The evidence supports the trial court's conclusion.

Mr. Elder testified that he and his new family were "living from week-to-week." Because his employer was in the process of cutting back and laying off employees, he was not sure about his employment future due to his low seniority among his co-workers. Because of his larger family and clouded employment future, he began investigating job opportunities in the Huntsville, Alabama area because he preferred to remain in Franklin County. Mr. Elder's search for local employment was unsuccessful, but he heard through word of mouth about a job opportunity in Houston. When he pursued this lead, the Houston company offered him a job and an over 40% increase in salary. Mr. Elder stated that his decision to accept the job was "strictly economical" and was motivated by his desire "to provide for my whole family." Like the trial court, we have no reason to doubt that Mr. Elder needed to increase his income to maintain the standard of living he wanted to provide for his family. Accordingly, the record fully supports the conclusion that Mr. Elder had a reasonable purpose for moving [Tenn. Code Ann. § 36-6-108(d)(1)].

---

[5](...continued)
contained in the *Aaby v. Strange* decision.

Ms. Elder failed to present any evidence demonstrating the sorts of specific and serious harm described in Tenn. Code Ann. § 36-6-108(d). Because these circumstances are not intended to be an exhaustive list of the circumstances that justify denying a custodial parent's request to relocate, we have reviewed the record in an effort to identify any other evidence that the children might be exposed to some sort of other specific harm in Texas that they would not be exposed to in Franklin County. We have found no such circumstances. Accordingly, we agree with the trial court's conclusion that Ms. Elder failed to present evidence to support her claim that the children will be exposed to a threat of specific and serious harm if they accompany Mr. Elder to Texas.

Finally, we turn to Ms. Elder's assertion that Mr. Elder is being vindictive and that his chief motive for moving to Texas is to frustrate her visitation rights. There is no question that the relationship between Mr. Elder and Ms. Elder from their divorce in April 1997 through the February 1998 hearing had not been harmonious. It is also evident that Mr. Elder had not been as supportive of Ms. Elder's efforts to visit with the children in person and by telephone as he should have been. However, on balance, Mr. Elder's conduct does not require us to conclude that he accepted employment in Houston to get back at Ms. Elder and to frustrate her efforts to visit her children.

This court understands full well that it will not be easy for Ms. Elder to be separated by such a distance from her two young children. However, when parents decide to divorce, they surrender the marital privilege of jointly rearing their children, and the courts must apportion the child-raising responsibilities between them. *Wall v. Wall*, 907 S.W.2d 829, 834 (Tenn. Ct. App. 1995). Once the courts have fashioned a custody and visitation arrangement in which one parent is awarded primary physical custody, the decisions regarding the children's education and residence fall to the custodial parent. *Rust v. Rust*, 864 S.W.2d 52, 55 (Tenn. Ct. App. 1993). Ms. Elder certainly may continue to visit the children and take part in their lives, but she may not, under the facts in this record, insist that they be kept near her.

## IV.

We affirm the judgment and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal to Suzette Marie Elder and her surety for which execution, if necessary, may issue.

WILLIAM C. KOCH, JR., JUDGE